# MERRIMACK.

## JULY TERM, A. D. 1858.

SMITH & a. v. BOSTON, CONCORD & MONTREAL RAILROAD.

In assumpsit, several breaches of the same contract may be assigned in one count.

Where a contract was to be completed before a fixed day, and many things are stipulated to be done without any designation of time, it is sufficient to aver that they were not done at the time they ought to have been.

No request need be alleged, if none is stipulated for, or reasonably implied.

When an enumeration of particulars would lead to great prolixity in pleading, a general statement is sufficient.

Where it was stipulated, in a contract for building a railroad, that if the aggregate amount of all material encountered in constructing it was increased by the definite location over the preliminary estimate, an allowance should be made, it was—*Held*, that an averment that the amount of material encountered was increased, &c., was in effect the same, as the amount of *all* material, and that the stipulation did not apply to an increase of the aggregate of each kind of material, but the aggregate of all kinds must be increased.

An agreement to refer does not bar a suit in law or equity, unless the contract is so framed as to make the reference a condition precedent. In such case a reference must be alleged in the declaration, or an excuse for the want of it.

Any act of the party, or of those for whose conduct he is responsible, by which a reference is prevented, will be a sufficient excuse, but it must be alleged, or it cannot be proved.

If a reference has been had, it must be alleged, and the reason why the party is not bound ; otherwise it cannot be impeached. If an award is fairly made by a disinterested third person, the parties are bound.

An agreement to refer to a party himself is not binding. Quere, if the parties are concluded by an agreement to refer, or by a decision of a mere agent of one of the parties ? The declaration in such case must allege the condition

precedent, performed, or excused ; and, if a decision is stated, the reason why it is not binding.

Where it was stipulated that payment should be made for building a railroad, partly in money and partly in stock, the payment for extra work may be recovered in money.

Where 'it is stipulated that one party shall do the work, the other finding materials—there is an implied agreement that the materials shall be seasonably furnished.

So where it is agreed that work shall be done under the superintendence of the other party's engineer, &c., there is an implied agreement that a suitable engineer shall be employed, and that he shall do what the contract requires, in due season.

The party who neglects to furnish such engineer is liable to an action; and can take no advantage of his failure.

In declaring upon such implied contract, it is not enough to set out the written contract in terms. It is necessary to state the implied contract, as it is contended to be, with all its qualifications.

ASSUMPSIT. The first count in the declaration was as follows : 1st. In a plea of the case, for that whereas, heretofore, on the first day of July, A. D. 1851, at Concord aforesaid, the said plaintiff agreed with the said defendant, for and in consideration of the sum of five dollars by the said plaintiff received of the said defendant, and of the further consideration of the agreement hereinafter set forth by the said defendant to be performed, to furnish for, construct and complete, in a thorough, substantial and workmanlike manner, to the satisfaction and acceptance of the agent and engineers of the said corporation for the time being, a good and substantial railroad, finished and completed in all its proper parts and arrangements, and deliver the same over to the said defendant in a complete and satisfactory running order, on or before the twentieth day of October, 1852, excepting, however, that the said defendant was to furnish, at its own expense, the right of way, with land damages, borrowing pits, iron for the track, and its appendages, including sleepers, together with the fencing and all station buildings ; said railroad to be constructed between its then present terminus at Warren, and the east bank of the Connecticut river, on or near a preliminary location made by Mr. T. J. Carter, and upon a definite

location, then, to wit, on the day and year aforesaid, being made of the same, terminating on the east bank of the river aforesaid; and the said plaintiff then and there further agreed to construct said railroad in strict conformity with the following specifications, to wit: That the said plaintiff would run his own risk of any difference of material between the preliminary and definite location, provided the aggregate amount of all material encountered upon the whole line should not be increased thereby over the amount, as then shown by the preliminary estimates in the engineer's office; and in case of all such increased aggregate quantity of material, the engineer would make such additional allowance to the said plaintiff as he might consider just. Said plaintiff to furnish all the materials and labor for the construction and completion of the road, except as herein before stated; particularly including the clearing, grubbing, grading, masonry, bridging and track laying. Grading to be for a single track, with a road-bed twenty feet wide in the cuts, and fifteen feet wide on the embankments, with slopes of one and a half feet base to one foot rise, except in rock cuts, which were to be taken out one foot base to six feet rise, and to include not only the ordinary preparation of the road-bed, but also the digging of all foundations, making of crossings, cattle-guards, and slopes and substitutes for public or private ways, turning streams or roads, grading off depôt lots, and any other excavation or embankment which might be required, either for constructing the railroad or for adapting it to the adjacent interests. All excavations to be deposited in the embankments, unless otherwise allowed by the engineer. The road-bed to be composed of free sand or gravel, for the depth of two feet below the grade line. When other material than this might be found, it was to be removed and its place supplied therewith. Bridge masonry to be constructed in conformity to the plans and directions of the engineer, of large, sound, split stone, and so pointed down as to present good beds and builds, and when laid to have full bearings, without the use of pinners; the work to be well bound together by headers extending into the wall. No pinners to be allowed on the face of

the work. Culvert masonry to include all culverts, cattle-passes, cattle-guards and bank-walls, and to be constructed of good sound stone, well laid, and bound together in a workmanlike manner. Covered culverts to be not less than two feet nor more than five feet wide in the single opening, and covered with substantial covered stone, lapping on each wall at least one foot, and of such thickness as the engineer might direct. Bridge or culvert masonry to be put in whenever required by the engineer; also such stone rubbling for bank or foundation protection as he might require. When, in the judgment of the engineer, timber foundation, sheet piling, or other structure for the protection or support of the masonry, should be required, it should be put in by the said plaintiff. Bridging to be constructed of good sound lumber, free from rots, shakes, and loose knots, and to be equal in every respect, as to quality of material, workmanship and durability, and to be finished off in a similar manner to those on said company's railroad between Plymouth and Warren, when fully completed. Iron for bolts or rods to be of the best quality for such use, and all bolts to have nuts and screws well threaded, with large cast washers, and properly supplied. Whenever the route of the railroad should be traversed by public or private ways, or roads, commodious passing places to be kept open for the accommodation of all having occasion to use them during the progress of the work, and all excavations and embankments, required for the permanent accommodation of said crossings, to be constructed with as little interference as might be with public or private travel, and to be made to the engineer's acceptance. The track, including all necessary sidings, switches and frogs, to be laid by the said plaintiff in the best manner, equal in every respect to the best specimen which the engineer might select on any part of the road between Warren and Concord. Said plaintiff to be accountable for all damages done by him or men in his employ, by their operations, to persons or property, in the construction of the road, and to indemnify and save the said corporation harmless on account of all expense incurred by reason of such damage. No ardent spirits to be allowed to be sold on

the work. The engineer to lay out the work as fast as it might properly be required, and no charge for deduction on account of work not being laid out, to be allowed, unless the engineer should have been notified in writing of the want of such work at least three days previous to the commencement of such alleged detention. The said plaintiff to place such force upon the line as in the judgment of the engineer should be required for the completion of the work within the time specified; and in case of his neglect or refusal so to do at any point or points, within one week after being notified in writing by the engineer, the said company to have the right to put on such force as might be required, and to deduct the cost of the same from the stipulated amount of this contract. The heavy work upon the line to be at all times manned fully in proportion to its comparative difficulty of completion. No omission by the engineers to disapprove of defective work at the time of a monthly or other estimate, to be construed into the acceptance of such work. The whole work to be done in a substantial, faithful and workmanlike manner, subject to the constant supervision, inspection and acceptance of the engineer, who should be the sole judge of the quality and quantity of the work, and his decision and admeasurement of the same to be final and conclusive between the parties. Said plaintiff, in consideration aforesaid, thereby relinquished any claim that he might have by this contract upon individual stockholders of said corporation, in their individual capacity, under the existing laws of New-Hampshire; and it was distinctly understood and agreed between the said parties, that said stockholders should not in any way be held responsible, and that said corporation should be held solely responsible for any and all claims arising by virtue of this contract. And the said defendant, in consideration of the undertaking and agreement on the part of the said plaintiff, as aforesaid to be performed, then and there faithfully promised and agreed to pay to the said plaintiff, his heirs, executors or administrators, for the fulfillment, execution and completion of the said road, in conformity with the foregoing provisions of this contract, three hundred and forty-five thousand dollars, payable one third

in the preferred stock of said corporation, at one hundred dollars per share, and the balance two thirds in cash.   Payments to be made monthly, according to the quality and quantity of the work performed, as estimated by the engineer, reserving a drawback of ten per cent. on the whole amount of work performed, to be paid over to said plaintiff at the completion of said contract; provided, however, that said contract should have been completed within the specified time, and in accordance with the provisions and stipulations herein before stated.   And the said defendant agreed to deliver the materials for the superstructure to the said plaintiff at such points on or near the line of the road as should not oblige the said plaintiff to haul them at any time more than one half mile to where such materials were to be used.   And the said plaintiff says that he has performed and fulfilled all things on his part by him to be performed and fulfilled in the building and construction of said railroad, as aforesaid; yet the said defendant, not regarding its said promise and undertaking, did not furnish the right of way with land damages, borrowing pits, iron for the track and its appendages, including sleepers, together with the fencing and all station buildings, although thereto requested by the said plaintiff, within the space of time and in the manner in which the same ought to have been furnished by the said defendant, but neglected so to do, by reason of which the said plaintiff was put to and obliged to incur much larger expense than he otherwise would, and to pay out a large sum of money, to wit, the sum of twenty thousand dollars; which said sum the said defendant, though thereto requested, then and there, to wit, on the 28th day of October, A. D. 1853, at Concord aforesaid, refused and still refuses to pay. And the said plaintiff avers, that in the building and construction of said railroad, as aforesaid, the aggregate amount of material encountered by the said plaintiff upon the whole line of said road was increased by the definite location of the same over the amount, as then, to wit, on said first day of July, A. D. 1851, shown by the preliminary estimates in the engineer's office of said corporation, and the said plaintiff was thereby obliged to perform more work and to incur

much greater expense in the building and construction of said railroad; to do and perform more work and furnish more materials for the bridge-work, to wit, fifty thousand feet of good sound lumber, free from rots, shakes and loose knots, at great expense, to wit, at the expense of seven hundred and fifty dollars; and six thousand cubic yards of bridge masonry, of large, sound, split stone, and so pointed down as to present good beds and builds, at great expense, to wit, at the expense of twenty-one thousand dollars; also, to do and perform more clearing, to wit, two thousand square rods thereof, at great expense, to wit, at the expense of two thousand dollars; and to do and perform more culvert masonry, including culverts, cattle-passes, cattle-guards and bank-walls, constructed of good sound stone, well laid and bound together in a workmanlike manner, to wit, ten thousand cubic yards thereof, at great expense, to wit, at the expense of twenty-five thousand dollars; and to do and perform more stone rubbling for bank and foundation protection, to wit, ten thousand cubic yards thereof, at great expense, to wit, at the expense of ten thousand dollars; and to put in more timber foundations, sheet piling, and other structure, for the protection and support of the masonry, to wit, twenty thousand feet thereof, at great expense, to wit, at the expense of three hundred dollars; and to use and furnish more iron for bolts, rods, screws, nuts, and washers, of the best quality for that use, to wit, five tons thereof, at great expense, to wit, at the expense of one thousand dollars; also to excavate and remove more solid rock, to wit, fifty-five thousand cubic yards thereof, at great expense, to wit, at the expense of one hundred and ten thousand dollars; and to excavate and remove more earth, to wit, fifty thousand cubic yards thereof, at great expense, to wit, at the expense of fifteen thousand dollars; and to excavate and remove more loose rock, to wit, twelve thousand cubic yards thereof, at great expense, to wit, at the expense of seven thousand and two hundred dollars; and to do and perform more grubbing, to wit, twenty-five hundred square rods thereof, at great expense, to wit, at the expense of three thousand seven hundred and fifty dollars. And the said

Smith *v.* B., C. & M. Railroad.

plaintiff avers, that for said increased aggregate quantity of material, by him as aforesaid encountered in the building and construction of said railroad, as aforesaid, the said plaintiff was justly entitled to have and receive of the said defendant the said last mentioned sums, amounting to the sum of one hundred and ninety-six thousand dollars, as the just additional allowance therefor; yet the said defendant, disregarding its agreement and promise aforesaid, though thereto requested by the said plaintiff, to wit, on the 28th day of October, A. D. 1853, at Concord aforesaid, has not paid said last mentioned sum, or any part thereof, but neglects and refuses so to do; and the said plaintiff says that the said defendant, further disregarding its said agreement and promise, did not, at the time of the completion of said railroad, make, nor cause to be made, nor has it since made nor caused to be made, an admeasurement of the work done and performed by the said plaintiff in the building and construction of said railroad, as aforesaid, though thereto requested by the said plaintiff, to wit, on the day and year last aforesaid, at Concord aforesaid, but then and there refused and still refuses so to do, by reason of which the said plaintiff was obliged to incur great expense and to pay out a large sum of money, to wit, one thousand dollars, for admeasurements of said work made by the said plaintiff, to wit, at said Concord, on the day and year last aforesaid. And the said plaintiff says that the said defendant, still further disregarding its said agreement and said promise, did not deliver the materials for the superstructure aforesaid to the said plaintiff at such points on or near the line of said road as did not oblige the said plaintiff to haul said materials at any time more than one half mile to where such materials were used, but did deliver said materials to the said plaintiff at such points as obliged the said plaintiff to haul said materials more than one half mile to where such materials were used in the superstructure aforesaid, by reason of which the said plaintiff was greatly hindered and delayed in the work of said superstructure, and in other work in the building and construction of said road, and was put to and obliged to incur much larger expense than he

otherwise would have been put to and been obliged to incur, and to perform more hauling and to pay out a larger sum of money therefor, to wit, the sum of fifteen thousand dollars, of which the said defendant then and there had notice, to wit, on the day and year last aforesaid, to wit, at Concord aforesaid, and which said last mentioned sum the said defendant then and there refused and still refuses to pay.

To this count the defendants filed a demurrer, and assigned the following causes of demurrer :

1. It sets out several distinct and separate breaches of the contract stated in said count, and is, therefore, double.

2. No time is stated in said count when the defendants were to furnish the right of way with land damages, borrowing pits, iron for the track and its appendages, including sleepers, together with the fencing and all station buildings ; nor does said count state when the plaintiff requested the defendants to furnish the same, nor in what particulars the same were not furnished in the manner in which they ought to have been.

Said count does not aver that the aggregate amount of all material encountered upon the whole line of said road was increased by the definite location of the same over the amount shown by the preliminary estimates in the engineer's office, when said contract was entered into, to wit, on the said 1st day of July, 1851 ; nor that notice has been given to the defendants that the engineer had made any allowance on account of any such increased aggregate amount, nor that said engineer had in fact made any such additional allowance, nor that he had been requested by the plaintiff to make such additional allowance ; nor is any legal reason assigned why the engineer was not thus requested to make such additional allowance, if the plaintiff would be entitled to it under the contract ; and said count does not aver any decision or admeasurement by said engineer, making the aggregate amount of all such material to exceed the amount, as shown by said preliminary estimates, or that the plaintiff has called upon him for any decision or admeasurement, to determine

the aggregate amount of all such material, nor is any legal reason assigned why the plaintiff has not thus called upon him, if the facts would warrant it. And said count is for money, whereas the plaintiff would only be entitled to two-thirds money and the other third in stock of said corporation, and no demand for said stock is stated to have been made.

4. Said count does not state that it was any part of the defendants' engagement that they would, either at the completion of said road or at any other time, make, or cause to be made, an admeasurement of the work done and performed by the plaintiff in building and completing said road.

5. Said count does not state when, or where, or upon what consideration the defendants agreed to deliver the materials for the superstructure to the said plaintiff, at such points on or near the line of the road as should not oblige him to haul them at any time more than half a mile to where such materials were to be used, nor does it specify the instances, or any of them, in which the defendants failed so to deliver such materials, nor that the defendants did not deliver said materials to the plaintiff at such points on or near the line of the road as should not oblige him to haul them at any time more than half a mile to where such materials were to be used, but only that they did not so deliver them in reference to the places where they were used.

6. Said count is also informal, and wholly insufficient in other respects.

*H. A. Bellows*, for the defendants.

The defendants rely upon all the causes of demurrer assigned.

In relation to the third cause assigned, that is no allegation that the engineer has made any allowance for an increased quantity of material; nor is any legal reason assigned why it was not done; and such allowance, we say, is a condition precedent. By the contract the plaintiff was to run his own risk of any difference of material encountered, &c., between the preliminary and definite location, if the aggregate amount was not increased thereby over the amount shown by the estimates; and in case of

all such increased aggregate quantity of materials, the engineer would make such additional allowance as he might consider just. It is under the latter clause that the plaintiff claims allowance. To entitle the plaintiff to any allowance he must show that there, 1st, has been a change of location ; 2d, that the aggregate amount of material encountered has been increased thereby, and increased to an amount beyond the estimates in the engineer's office ; and, 3d, that the engineer has made an allowance as he deemed just.

The duty of the engineer was not ministerial. He was to measure and determine the amount of increased material, its character, whether of rock, loose rock, sand, gravel and clay ; and make such allowance as, under all the circumstances, he should deem just : and in doing this, in the absence of fraud, he was bound by no prescribed rules.

The corporation contracted to pay for building and completing the railroad, $345,000 in stock and money ; with a further provision, in case of increased material occasioned by change of location, to pay such further sum as the engineer should decide to be just. There is no agreement to pay any fixed sum beyond the $345,000, or any sum to be ascertained by computation or measurement ; but it is such sum as the engineer should deem to be just. Until that sum is fixed by the engineer no action can be maintained for any extra allowance.

In *Worsley* v. *Wood & als.*, 6 T. R. 710, which is an action on a policy of insurance, in which provision was made that the insured, in case of loss, should procure a certificate of the minister and others of the parish to the character, &c., of the assured, and their belief that he had sustained the loss without fraud, it was *held*, upon much consideration, that the certificate was a condition precedent, and that the unreasonable withholding of such certificate was no excuse. Similar doctrine is recognized in Marshall on Insurance 807 and 11 ; 1 Phill. on Ins. 422, 3 ; 1 Chitty's Plead. 323, and note, 325, 6 ; *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 385. So, where a building was to be erected by the plaintiff, and the defendant agreed to pay for it, on

receiving the architect's certificate that it was done to his satisfaction, *held* that the certificate was a condition precedent. *Morgan* v. *Birnie*, 9 Bing. 672.

So where, in a building contract, payment was to be made by instalments, only on a certificate of the defendant's surveyor that the work was properly done — *Held*, the certificate was a condition precedent. *Milner* v. *Field*, 1 E. L. & E. 531.

So where the plaintiff was to do the work to the satisfaction of the architect. *Glenn* v. *Leith*, 22 E. L. & E. 489. So where coke was to be delivered to the defendants, of a quality to the satisfaction of the defendants' inspecting officer, and a suit was brought — *Held*, the declaration was bad in substance in not alleging the article to have been to the satisfaction of the officer. *Grafton* v. *Eastern Counties Railway*, 22 E. L. & E. 557. So where the contract was to deliver stone to the satisfaction of a building committee. *Butler* v. *Tucker*, 24 Wend. 447. So where it was agreed that extra work should be fixed by the engineer — *Held*, that it was conclusive. *Delaware*, &c., *Canal Co.* v. *Dubois*, 15 Wend. 89. So where, by a contract with the owner of a steamboat, to transport troops, &c., for the government, the certificate of the commanding officer was required, to show what services were rendered — *Held*, it was a condition precedent. *United States* v. *Robinson*, 9 Peters 319. See *Faunce* v. *Burke*, 16 Penn. St. R. 469; 12 U. S. Dig. 25, sec. 118; where it was held that the action of the engineer was conclusive. So where the covenant was to pay so much, as arbitrators should award, in an action of covenant — *Held*, an award was a condition precedent. *Adams* v. *Willoughby*, 6 Johns. 65; *Brown* v. *Bellows*, 4 Pick. 178, 189, 190; *Kenniston* v. *Ham*, 29 N. H. (9 Foster) 501; *Pendergast* v. *Meserve*, 22 N. H. (2 Foster) 109.

*C. R. Morrison*, for the defendants.

I. The first default charged upon the defendants is that they " did not furnish the right of way," &c., although thereto requested by the plaintiff within the space of time and in the manner in which the same ought to have been furnished.

As to this grievance the declaration is fatally defective, both as to the contract and the breach.

1. The contract is stated in this way : " In a plea of the case, for that whereas, heretofore, on the 1st day of July, 1851, the plaintiff agreed with the defendants, for and in consideration of the sum of five dollars, and of the engagements hereinafter set forth by the defendants to be performed, to construct a railroad, &c., and deliver the same to the defendants on or before the 20th day of October, 1852, excepting, however, that the defendants were to furnish the right of way, &c. The defendants' engagement comes in only by way of exception from the plaintiff's engagement. If this indirect recital can be regarded as a substantial averment of a promise on the defendants' part, yet it is fatally defective in not stating the consideration. We might conjecture that the consideration was probably the plaintiff's engagement, but this is not in any way averred. Nor is any time stated within which the promise was to be performed. If, as has been argued, it might be inferred that it was to be before the 20th of October, 1852, the contract should have been pleaded according to its legal effect, and the time for the performance stated.

2. The assignment of the breach is, if possible, even more loose and imperfect than the statement of the contract. It is not alleged that the right of way was not furnished before the 20th of October, 1852, nor is the time when the defendants were requested to furnish it stated. The allegation is simply that it was not furnished within the space of time and in the manner in which the same ought to have been furnished. This is the plaintiff's opinion of his rights — nothing but a legal conclusion from facts not stated. He might just as well have contented himself with saying that the defendants made a contract with him, and broke it, without describing the contract, or in what respects broken. But he must state facts. See 1 Chitty's Plead. 214, 332, 335 and 540 ; *Hume* v. *Liversedge*, 3 Tyr. 237 ; *J. Anson* v. *Stewart*, 1 Term Rep. 748 ; *Van Ness* v. *Hamilton*, 19 Johns. 371 ; 9 Co. 25 ; 10 Peters S. C. Rep. 343 ;

*Fletcher* v. *Peck*, 6 Cranch 121 ; *Freary* v. *Dakin*, 7 Johns. 79 ; *Priestly* v. *Fowler*, 3 Mee. & W. 1 ; *Chadwick* v. *Trower*, 6 Bing. N. C. 1 ; *Metcalf* v. *Hetherington*, 32 L. & E. Rep. 606.

II. If, as the plaintiff argues, the words, " material encountered," mean " *all* material encountered," then the second grievance is, in effect, that from changes in the location the aggregate amount of all material encountered was increased over the estimates, and that for such increase he should have been paid by the defendants the sum of $196,000, " as the just allowance therefor."

The declaration in this, also, is bad, both as to the contract and the breach.

1. It is recited that the plaintiff at, &c., for certain considerations named, agreed to construct for the defendants a railroad, on or near a preliminary location made by T. J. Carter, and upon a definite location then being made, and " in strict conformity with the following specifications, to wit : that the said plaintiff would run his own risk of any difference of material between the preliminary and definite location, provided the aggregate amount of all material encountered upon the whole line should not be increased thereby over the amount, as there shown by the preliminary estimates in the engineer's office ; and in case of all such increased aggregate quantity of material, the engineer would make such additional allowance to the said plaintiff as he might consider just."

The plaintiff does not say that the defendants promised that the engineer would make an allowance, and can the court say it for him ? Even if a promise could be inferred, he does not say upon what consideration it was made, and can the court say it for him ? The question is not one of evidence but of pleading. He does not profess to set out the contract in its very terms, (12 N. H. 52) and ask the court to construe it for him, but attempts to state its legal effect, and therefore it cannot be taken that its legal effect is more extensive than he has himself averred. But if we were to treat the declaration as if the contract were set out in its terms, and the court called upon to construe

it, it seems to be quite clear that no such promise could be inferred from it as the plaintiff assumes. The promise which the assignment of the breach assumes to have been made, is in effect a promise to pay whatever the jury might consider just ; but the only promise that can be inferred from the contract in any view, is a promise to pay whatever the engineer should consider just. The difference is important. The breach, therefore, varies from the contract. 1 Chitty's Plead. 335.

2. No good answer has been given to the objection that there is no averment of an allowance by the engineer.

The position that an aggregate increase of material, to the plaintiff's damage, is all that is necessary to give a right of action, cannot be sustained. The contract evidently requires that the increase must have arisen from changes in the location, and must also exceed the estimates, and that an allowance for such increase be averred and proved.

Nor can the plaintiff sustain his position, " that in case no allowance should be made by the engineer in a proper time and manner, the plaintiff could recover without it." He would be under the necessity of showing, in addition, that the engineer's neglect was the defendants' procurement or fault, or at least that he had done all in his power to obtain an allowance. But if this position were conceded, the declaration would still be bad, for the declaration does not set up any such case ; it does not allege that the engineer has neglected his duty. For anything that appears, he may have made a proper allowance, which the plaintiff seeks to disregard. It is not true that in a case like this it is the duty of the corporation to go forward and cause an allowance to be made, without any action by the contractor to obtain it. But if it were true it would not help the declaration, for no such case is set up. We have not been sued for not causing an allowance to be made by the engineer.

Nor does the objection affect only the amount of damages ; it goes to the right of action : the allowance was a condition precedent. *United States* v. *Robeson*, 9 Peters 319 ; *Thurwell* v. *Balbernie*, 2 M. & W. 786 ; *Miller* v. *Field*, 5 Exch. 829 ; S. C.,

1 L. & Eq. 531 ; *Scott* v. *Avery*, 20 L. & Eq. 327, and 36 do., 1 ; *Brown* v. *Overton*, 11 Exch. 715 ; S. C., 34 L. & Eq. 610 ; Redfield on Railroads 221, sec. 119. And if the plaintiff could maintain that it was the defendant's duty, which we deny, to cause this allowance to be made, it would not alter the case ; for the plaintiff must still aver performance, or a legal ' excuse for not averring it. 1 Chitty's Plead. 321. The fatal defect to the declaration as to this claim is, that it does not make out a *primâ facie* case in any view that can be taken of the rights of the parties. The conclusion that the defendants are in fault is an obvious *non sequitur* from the premises laid down. The suggestion that the averment that the plaintiff is entitled to receive the sum named as the just additional allowance, is a sufficient averment that an allowance was made, cannot require any answer.

III. As to the third grievance, we say that it does not appear that we ever engaged that we would, at the completion of the road, make, or cause to be made, an admeasurement of the work.

If such a contract could be inferred from any custom, or from the different parts of the agreement which the plaintiff's counsel relies upon, he should have so pleaded, stating the promise and the consideration. He has not done it, and the court cannot do it for him. We are sued for not making an admeasurement at the completion of the work. If, under any obligation at all upon this subject, there is nothing to show that our whole duty would not be performed by admeasurements from time to time during the progress of the work ; and, for any thing that appears, we have made such admeasurements.

It cannot be pretended that there is in any part of the contract an express undertaking to cause admeasurements to be made, as in *Herrick* v. *Belknap*. From what is such an undertaking to be implied ? From custom ? But have the court any judicial knowledge of any such custom in any case, much less in a case like this ? The work was not to be paid by the yard, but by the job, and this distinction it seems to us is quite important.

The fact that in certain contingencies the contractor would have an additional allowance by the engineer, did not make it

any more our duty than his to ascertain if the contingencies had arisen.

There would be no occasion for an accurate admeasurement, unless the contractor should apply for an additional allowance. If he supposed that he was entitled to it, he ought to have applied for it, and then the engineer would have made admeasurements, if necessary. Payments, it is true, were to be made monthly, according to the quantity and quality of the work performed, as estimated by the engineer. But if this provision required admeasurements at any time, the time surely was not at the completion of the work, as assumed in the declaration. It did not, however, require admeasurements at any time, but only estimates. The estimates were merely to regulate the monthly payments, and the plaintiff would receive the gross sum in the end, without regard to quantity and quality, provided he should perform his part of the agreement. The only contingency in which admeasurements could be essential to either party would be in case there should be an application to the engineer for an additional allowance, and it should then appear that there had been changes which were injurious to the contractor. If an application were made for an additional allowance, the engineer, without admeasurements, might perhaps be able to determine, either that there had been no changes, or else that all the changes had been beneficial to the contractor ; and in either event there would be no occasion to ascertain the quantity or quality of the work performed, by any admeasurements of the same.

The defendants might well hesitate to incur the expense of admeasurements until they should become necessary.

IV. The count is defective in the particulars stated under the fifth cause of demurrer.

1. The statement of the contract is as follows : " And the said defendant agreed to deliver the materials for the superstructure to the said plaintiff at such points, on or near the line of the road, as should not oblige said plaintiff to haul them at any time more than one half mile to where such materials were to be

used." This constitutes a distinct clause and period by itself, wholly omitting the time and place and consideration of the agreement. And now the court are asked to infer that it was for the consideration previously stated. The court cannot make a new declaration.

2. The breach is too general. The particular instances of supposed neglect should have been specified, so that the defendants might have had notice of the ground of complaint, and the court be able to determine whether they constitute a breach of the stipulation. *Wait* v. *Maxwell*, 4 Pick. 88.

The breach is also too large. The materials were to be delivered within half a mile of the places where they were to be used. The complaint is that they were not delivered within half a mile of the places where they were used.

It is said, in behalf of the plaintiff, that, of course, he used the materials at the places where they were to be used. But this is very bad reasoning. It does not follow, as a matter of course, that the materials were used at the places for which the plaintiff properly designed them. The road was some twenty-five miles long. It is entirely consistent with the plaintiff's allegations to suppose that he used materials delivered for one place, at some place much more remote.

Says Mr. *Chitty :* " If the covenant were for quiet enjoyment, without lawful disturbance, a breach, merely stating that the plaintiff was disturbed, is insufficient, for it should be that he was *legitimo modo* disturbed, in the words of the covenant ; or, otherwise, the plaintiff should show by whom he was disturbed, and how." 1 Chitty's Plead. 335. The same principle applies here. The court cannot require less than an assignment in the words of the contract, or. else a specification of the particular instances of supposed neglect. See also *Amdis* v. *Mason*, 6 L. & E. 391. The defendants are entitled to a judgment upon the demurrer, as to so many of the breaches in relation to which the declaration is substantially defective. *Glover* v. *Tuck et als.*, 24 Wend. 153. We say that the declaration is bad as to all the breaches.

*G. W. Stevens*, for the plaintiff.

To the first cause of demurrer set down we reply :

1. That in assumpsit the assignment of more breaches than one in the same count, of the defendants' separate and distinct stipulations in the same contract, is not duplicity or doubleness, as laid down in the books. Com. Dig., Pleader, E, 2 ; Bac. Abr., Pleas, &c., K ; Ch. Pl. 2, Am. ed., 230, and authorities cited in note 1; Saund. Pl. 1, 921, 5th Am. ed., and authorities cited ; Stevens' Pl. 250 ; Bouv. Law Dic., Title, Duplicity, and authorities cited.

2. This practice not only seems warranted from the rules and precedents found in the books, but particularly enjoined upon the plaintiff, that great prolixity of pleading may be avoided, as well as a multiplicity of actions. Oli. Am. Pr., 3d ed., 112 ; 1 Saund. Pl. & Ev. 215, 921 : Ch. Gen. Pr., vol. 3, 457, 460 ; 1 Ch. Pl. 330 ; *Legh* v. *Hewitt*, 4 East 154 ; 1 Ch. Pl., 11th Am ed., 243, 227, 336, and authorities cited in note b, and see form by Landlord against Tenant, 2 Ch. Pl., 6th ed., 191, and 2d of Went. Pl., from page 10, and following.

3. If a count so framed be ill for doubleness or duplicity, still, as the defendant has not " specially and particularly set down and expressed (the fault) together with his demurrer," the count stands as upon general demurrer, and is therefore aided. 27 Eliz., chap. 5, sec. 1 ; Bac. Abr., Pleas, &c., star paging 134 ; Com. Dig., Pleader, Q, 8, p. 489 ; 1 Ch. Pl., 11th ed., 667 ; Saund. Pl. & Ev. 949–951, and authorities cited from page 952 ; 13 Johns. 264 ; 12 Wendell 169 ; see *Whitney* v. *Henry*, 2 Johns. 433.

*Chandler*, with him *George & Foster*, and *G. W. Stevens*, for the plaintiff.

The demurrer is frivolous.

I. The declaration properly alleges several breaches. The special contract declared on contains a variety of stipulations to be performed on the part of the defendants, and for a breach of each of these stipulations the plaintiff is entitled to declare in a

single count. A distinction was made in the old books between actions on bonds and for penalties, and actions for covenant broken. In the former cases but one breach could be alleged, because a single breach operated as a forfeiture, and then the penalty stood as security for all other breaches. But in actions to recover damages for the non-performance of a covenant or special contract, according to all the authorities a breach of each stipulation might be alleged in one count, provided no more than one breach of the same stipulation was stated. Com. Dig., Pleader, C, 33 ; 1 Saund. Pl. & Ev., Assumpsit, 216 ; 1 Ch. Pl. 226, 336, 337, 338, 411, n ; Bac. Abr., Covenant, I ; Cro. Car. 176 ; Ld. Raym. 106 ; 1 Saund. 58, a ; *Manser's Case*, 2 Coke 4, a ; *Pinkney* v. *Rotel*, 2 Saund. 380 ; Cro. Jac. 348, 557 ; *Duppa & Mayo*, 1 Saund. 285 ; Buller's N. P. 163 ; *Goodwin* v. *Crowle*, Cowp. 359 ; and even the above distinction has been long since abolished in England. By statute 8 & 9 W. 3, chap. 11, it is provided that in actions on bonds or for penalties, several breaches may be assigned. This statute does not specify simple contracts and covenants, and therefore clearly shows that in those actions, by the common law rules of pleading, several breaches might be assigned. Bac. Abr., Covenant, I.

II. 1. The declaration sufficiently states· the time when the defendants were to furnish the right of way, with land damages, &c.

The contract set out is, that the plaintiff agreed to build and complete a railroad for the defendants, according to certain specifications and estimates, " on or before October 20, 1852," except that the defendants were to furnish the right of way, with land damages, &c. The right of way with land damages, borrowing pits, iron for the track and sleepers, together with fencing, and all station buildings, were all necessary, by the very nature of the contract, to be furnished before the completion of the work which the plaintiff agreed to perform within a certain time, and the averment that the defendants agreed to furnish these essentials is equivalent to an averment that they agreed to

furnish them when necessary, that is, before October 20, 1852, and is sufficient.

2. No averment of a request to the defendants to furnish the right of way, &c., was necessary.

The right of way, with land damages, &c., were not, by any express terms of the contract, to be furnished only " upon request." Was there then any implication from the nature and terms of the contract making a request necessary ? Clearly not. The right of way, with land damages, borrowing pits, &c., were, as above suggested, essentials and prerequisites to the plaintiff's performance of his part of the contract. The plaintiff could not move to construct the road without these essentials were furnished, either by himself or some one else. They were conditions precedent to his obligation under the contract.

In an action by a lessor on a covenant by the defendant to repair, " the lessor finding timber," the finding timber is a condition precedent to the defendant's obligation. Bac. Abr., Pleas, B, Declaration ; Willes 496.

If a party agrees to do work for another, he supplying materials, the stipulation to furnish materials constitutes a condition precedent. *Shaw*, C. J., *Knight* v. *N. E. W. Co.*, 2 Cush. 286.

And where, by the terms or nature of the contract, the defendant is to do the first act, no statement of a request is necessary. 1 Chitty's Pl. 330.

This question is analogous to that of the necessity of notice. Where the matter alleged is to be considered as lying more properly in the knowledge of the defendant than of the plaintiff, no notice need be averred. It is the defendant's duty to take notice. 1 Ch. Pl. 328, and cases cited ; 1 N. H. 246.

And, by parity of reasoning, where the act to be done is a positive performance by the defendant of a condition precedent to the plaintiff's stipulation, it is the duty of the defendant to go forward and perform his contract, and no request to him is necessary, nor need be averred. 1 Chitty's Plead. 330, above cited ; Chitty on Con. 733.

And even if the construction of the railroad by the plaintiff,

and the furnishing the right of way, &c., by the defendants, were concurrent stipulations, if the plaintiff alleges, as in this case, complete performance on his part, no averment of a request to the defendant to perform his part is necessary, unless the contract expressly stipulates for a request. 1 Saund. Pl. & Ev. 213.

3. The count sufficiently states in what particulars the defendants neglected to furnish the right of way, with land damages, &c.

The breach is stated in the language of the contract, and is sufficient. 1 Chitty's Plead. 332, 333; Bac. Abr., Covenant, I; *Proctor* v. *Burdet*, 3 Lev. 170. And the averment of the breach goes further, and avers the time "within the space of time in which they ought to have been furnished," that is, before October 20, 1852, and "in the manner in which they ought, &c.," that is, in the manner in which the right of way, &c., considering the nature of the plaintiff's contract, ought to have been furnished, to enable the plaintiff to complete his part of the contract.

III. 1. The count does aver, in exact legal effect, " that the aggregate amount of all material encountered upon the whole line of said road was increased by the definite location of the same," over the preliminary estimates.

If the defendants can make a substantial distinction in legal effect between "the aggregate amount of material encountered upon the whole line," and "the aggregate amount of all material encountered upon the whole line," the distinction is too slight for our appreciation.

2. It was not necessary to aver that the engineer had made an additional allowance for the aggregate increased material, and that notice thereof was given the defendants, nor any request to the engineer to make such allowance, nor any reason for not making such request.

The averment that there was an aggregate increase of material, and that the plaintiff was damnified thereby, is all that is required to give the plaintiff a cause of action.

The contract in relation to an increase of material was, that the plaintiff would run his own risk of such increase, provided,

however, that there should be no aggregate increase, and in such case the engineer would make an additional allowance therefor.

The legal effect of that agreement is, that in case there should be an aggregate increase of material, then the defendants would " run the risk." The plaintiff agrees to run the risk, upon a certain condition. If that condition is not complied with, then, by legal intendment, the defendants are to run the risk. And then follows a provision relative to ascertaining the amount to be allowed the plaintiff as damages, in case of an increase. But the averments of the plaintiff that the condition of his running the risk was not complied with, that he has been damnified thereby, and that the defendants refuse to pay him an allowance for these damages, make out all that is necessary to the plaintiff's right of action.

The provision that, in case of any aggregate increase, the engineer would make such additional allowance as he might consider just, is no part of the stipulation alleged to have been broken, but is only a collateral provision in relation to the liquidation of damages. The rule is, that the plaintiff is required to set forth with correctness the legal effect of " that particular part of the contract which he alleges the defendant to have broken, or to show so much of the terms of the agreement, beneficial to the plaintiff, as constitutes the point for the failure of which he sues." 1 Chitty's Plead. 317 ; 6 East 567.

With this rule the plaintiff here complies. The stipulation which he alleges the defendant to have broken is in legal effect, as before stated, that in case of an aggregate increase of material, the defendants are to run the risk, and make an allowance therefor. Of that stipulation the plaintiff states a breach, and thereby shows a cause of action. The provision relative to the manner in which the amount of the allowance to the plaintiff for damages upon that breach is to be determined, is a distinct matter, entirely aside from and collateral to the stipulation alleged to have been broken, and is to be considered only upon reaching the question of damages. This view is completely sus-

tained by the case of *Clarke* v. *Gray*, 6 East 564, and 1 Chitty's Plead. 315, 316.

That this provision that the engineer will make such an additional allowance as he may consider just, is a collateral provision, and does not constitute a part of the stipulation alleged to have been broken, is also evident from the fact that in case no such allowance should be made by the engineer, in a proper time and manner, the plaintiff could still recover as much as he was justly entitled to receive; *Herrick* v. *Belknap*, 27 Vt. 673; Pierce on Railroad Law 382; and this is admitted by the defendants in assigning their cause of demurrer. And unless the provision qualifying the defendant's contract be such as wholly discharges him from liability, it is not necessary to be mentioned in pleading, but only goes in reduction of damages. *Clay* v. *Willan*, 1 H. Bl. 298, and see *Clarke* v. *Gray*, 6 East 570.

And even in case it were a condition precedent to the plaintiff's right to recover for the aggregate increased material, that the allowance therefor should be made by the engineer, the averment that the plaintiff is entitled to recover the sum named as the just additional allowance therefor, is sufficient. The averment need not be in the language of the contract, and the legal effect of this averment is that the plaintiff is entitled to that additional allowance by virtue of an allowance made by the engineer, if such allowance were necessary in pursuance of the contract. And notice that such allowance had been made, if necessary, is implied in the special request averred to pay such allowance.

3. Although it is to be implied, from all the terms of the contract, that measurements were to be made by the defendants' engineer, yet the stipulation here alleged to have been broken does not expressly so provide, and the breach being alleged in the language of the contract is sufficient, without averring that the admeasurement making the aggregate increased material was made by the engineer, or that the engineer was called upon to make such admeasurement.

4. The count should be for money, and not for two thirds

money and one third stock. The count is not to recover the sum of $345,000, to be paid by the defendants upon the plaintiff's completion of his part of the contract, but is to recover damages for breaches by the defendants of stipulations made by them with the plaintiff, which damages are to be allowed in money. In case the aggregate material were not increased, the plaintiff agreed to receive his stipulated and fixed compensation, two thirds in money and one third stock. But in case of an increase of material he did not agree to receive his additional allowance therefor in the same way, but is entitled to it in cash. The plaintiff did not expressly agree to receive any additional allowance to which he might be entitled, two thirds cash and one third stock, and it is not to be implied, because he was willing to do a certain amount of work at a certain price, to be paid in stock and cash, that he agrees to receive pay for extra work in the same manner.

IV. The whole contract implies that the admeasurements of the work performed were to be made by the defendants' engineers.

This is implied from the nature of the engagement. The plaintiff contracted to build a railroad for the railroad corporation defendants. In all such cases of railroad contracts the court will take notice of the invariable custom, that the measurements are to be made and returned by the engineers of the railroad corporation. Such is the uniform and universal rule, and the parties, from the fact that they make a "railroad contract," will be presumed to contract with reference to this rule.

An agreement that the defendants' engineers would make the admeasurements, is also to be inferred from the expressions of the contract. The preliminary estimates were made by the defendants' engineer. He was to lay out the work, and to superintend the whole construction, to make the additional allowances in case of increased material, to be the sole judge of the quality and quantity of the work. He was also to make a monthly estimate, in order that the monthly payments might be made, and it was agreed that his decision and admeasurement of the work should be final and conclusive between the parties.

From the nature of the contract, therefore, and from its stipulations, an agreement is clearly to be inferred that an admeasurement should be made by the defendants' engineers.

And this is admitted and assumed by the defendants' counsel, in assigning their third cause of demurrer.

In *Herrick* v. *Belknap*, 27 Vt. 673, it is decided that where it is stipulated in a railroad contract that the engineer is to be the sole judge of the quantity and quality of the work, and his decision is to be final, this stipulation imposes upon the company the duty of employing engineers, and causing them to make the admeasurements and estimates in a proper time and manner. See Pierce on Railroad Law 382.

V. 1. The count does state when, where, and upon what consideration the defendants agreed to deliver the materials for the superstructure at proper places. The amount of this stipulation is plainly referable to the preceding allegations of the contract recited, made at Concord, July 1, 1851. The words, " the materials for the superstructure," " the line of the road," and the whole language of the averment, makes it a portion of the contract already partially recited. So also the language of the breach of this stipulation makes it certain that the stipulation is a part of the same contract. The various breaches recited allege that the defendants, disregarding their " said promise and agreement," did not perform, &c., and the breach of this stipulation, continues the same language, " disregarding its said promise and agreement," did not deliver, &c.

2. The breach need not specify the instances nor any of them in which the defendants did not deliver said materials at proper places. The breach is in the language of the contract, and covers the whole stipulation, both negatively and affirmatively.

The case of *Earl Falmouth* v. *Thomas*, 3 Tyr. 26 ; 1 Ch. Pl. 333, is conclusive upon this point.

3. The averment that the defendants did not deliver the materials at proper points in reference to the place " where such materials were used," is sufficient.

The contract when made, was, that the defendants would deliver the materials so that the plaintiff need not be obliged to haul them more than one half mile to the place where they were " to be used" by the plaintiff in building the railroad, in accordance with his contract. The count avers that the plaintiff did perform his contract and build the railroad, and of course he " used" the materials furnished by the defendants, at the places where they were " to be used" when the contract was made. In allegation, therefore, after the work is done and the materials " used," that the defendants did not deliver them at proper points with reference to the places where they were actually " used," is a sufficient averment that they were not delivered at proper points with reference to the places where they were " to be used," when the contract was made and before the work was commenced. See 1 Ch. Pl. 314 ; 2 B. & Ald. 335.

BELL, J. This case raises several questions of some difficulty, both as to the pleading and the construction of the contract declared on.

Of these the first is, whether breaches of several distinct and separate provisions of the contract can be properly assigned in the same count.

There can be no doubt, says *Lawes*, (Pleading in Assumpsit 278,) but that in assumpsit the plaintiff is not confined to assign one single breach, as he is in declaring in debt for a penalty ; but may, in the former action as well as in covenant, assign as many breaches as he thinks proper ; at all events, where he does not declare on a promise to pay a penal sum. *Lee* v. *Hewitt*, 4 East 154 ; *Athawes* v. *Ash*, Lawes Ast. 73, n ; 2 Ch. Pl. 94, 134 ; 1 Chitty's Pl. 295 ; 1 Saund. Pl. & Ev. 133 ; Com. Dig., Pl., C, 33 ; 2 Went. Pl. 2, 10, &c.

II. 1. No time is stated when the defendants were to furnish the right of way, &c.

No time is stated in the contract, nor from the nature of the contract was it possible to state any. They must be furnished, as they should become necessary in the progress of the work.

Where an agreement is made to do certain things, without any designation of time, the law determines they shall be done in a reasonable time. It is sufficient that the contract is stated as it is made, because the agreement is to be construed in the pleadings, as it is in the original writing.

Neither is it necessary, in alleging the breach, to aver that a reasonable time for the performance has elapsed, and the work has not been done, unless it would otherwise fail to appear from the facts stated, that the stipulation was broken. In the present case it is alleged that the contract of the plaintiff was to be completed before a fixed date, " on or before October 20." These stipulations must of necessity precede the completion of the contract; and an averment that the defendants did not furnish the same at the time they ought to have been furnished, is a sufficient allegation of the breach in this respect.

II. 2. Whenever a request is necessary to be alleged in order to entitle the plaintiff to a right of action, it is necessary that such request should be stated, with time and place, which is not here done. But a request is not necessary in this case. It is not stipulated that these things should be furnished on request, nor can a request be reasonably implied. The need there would be of these things was just as apparent to the defendants as to the plaintiff; Dix v. Flanders, 1 N. H. 246; Watson v. Walker, 23 N. H. (3 Foster) 491; and their contract was, that they should be seasonably furnished, without any action of the plaintiff.

II. 3. Whenever an enumeration of particulars would tend to prolixity, a general statement is sufficient. 1 Saund. 116, note 1; 1 Ch. Pl. 240. That seems in a special manner the nature of this case. The road was twenty miles or more in length. The right of way, track iron, sleepers, and fencing, were to be furnished at all points, and borrowing pits, and station buildings, where required. In the event of any extensive failure to perform this stipulation, it must be impracticable to state the particulars without a very long and detailed statement; and it does not seem to us that such a specification could be reasonably required in a declaration. If it should appear to the court, on application,

that such specification was in fact necessary, it might be ordered. Gould's Pl. IV., secs. 26, 33, 36; 1 Chitty's Pl. 240.

III. 1. It is objected that the count does not aver that the aggregate amount of all material, &c., was increased by the definite location over the amount shown by the preliminary estimates, &c. The allegation excepted to is as follows:

" And the said plaintiff avers, that in the building and construction of said railroad, as aforesaid, the aggregate amount of material encountered by the said plaintiff, upon the whole line of said road, was increased by the definite location of the same over the amount as then, to wit, on said first day of July, A. D. 1851, shown by the preliminary estimates in the engineer's office of said corporation," &c.

The contract speaks of the aggregate amount of all material; the declaration uses the phrase, the aggregate amount of material, omitting *all*. It might make a very essential variance in the effect of the contract, if the language of the declaration could be so construed as to make the company liable for any increase of the aggregate material of each kind, instead of the aggregate of all kinds of materials, but it does not seem to us that by any fair construction the contract or the declaration can be so understood; nor does the omission of the word *all* in any way vary what would otherwise be the effect of the agreement.

III. 2 to 8. These exceptions all rest on the same principle. They raise the questions, whether the plaintiff is entitled to recover any thing on account of any increased aggregate of material, unless upon the allowance of the engineer. Whether it is not the province of the engineer to ascertain, if the aggregate is increased, and how much, as well as what allowance is to be made, and whether it is not the duty of the plaintiff to show that he has done so, or that he has been called upon to do it, and has refused; or that some just cause exists why that has not been done, and if such allowance is made, whether the defendants are liable until notice of it.

The views of the parties differ entirely on these questions; the plaintiff referring to the estimates in the engineer's office only,

for the aggregate on the preliminary location, averring, in general terms, the aggregate to have been increased, and to what extent, as matters of fact, to be proved and settled upon the trial; while the defendant contends that by the contract the engineer is made the exclusive judge of the quality and quantity of the work, and no action can be maintained, unless upon his measurement and allowance; that it is the duty of the plaintiff to procure such measurement and allowance, and to give the defendant notice of the result, before any action can be maintained.

An agreement to refer any matters of dispute that may hereafter arise between the parties, is not unusual in contracts of insurance, of partnership, and for the construction of large buildings and other works. In general such contracts do not bar the parties of their remedies by action at law. *Scott* v. *Avery*, 20 E. L. & E. 327, 36 E. L. & E. 1; *Avery* v. *Scott*, 20 E. L. & E. 334, 8 Exch. R. 487; *Goldstone* v. *Osborne*, 2 C. & P. 550; *Haggart* v. *Morgan*, 4 Sandf. Sup. Ct. 198; *Reeves* v. *White*, 10 E. L. & E. 343; nor by suit in equity. *Mexborough* v. *Bower*, 7 Beav. 127.

They will not be specifically enforced in equity; *Blundell* v. *Buttargh*, 17 Vesey 232; *Milnes* v. *Gery*, 14 Vesey 400; and an action at law on such an agreement affords no effectual redress for a refusal to refer, since it is not easy to show that the party has sustained any actual damage by the refusal.

If an award is actually and fairly made, in pursuance of such a stipulation, by a disinterested arbitrator, the parties are bound by it, as they are in other cases of reference.

If the form of the contract is such as to make the award a condition precedent to the right to recover, as if the agreement is to pay so much as a third person shall determine to be just, then the agreement is binding. So if the work is to be done, or materials are to be furnished, to the satisfaction or acceptance of a third person, or the price to be paid is dependent on his decision as to the quantity, quality, or price of the materials, or workmanship. *Parke* v. *Great Western R. W. Co.*, 3 R. W. Cas. 17; *Oakley* v. *Morton*, 1 Kern. 30; *Gardner* v. *Williamson*, 5 Rich.

28 ; *Dabies* v. *Mayor of Swanzey,* 20 L. & E. 529 ; *Mason* v. *Bridge,* 14 Maine, 2 Shep. 468 ; *McAvoy* v. *Long,* 13 Ill. 147 ; *Canal Trustees* v. *Lynch,* 5 Gilm. 521 ; *United States* v. *Robeson,* 9 Peters 327.

In such case it must be alleged that the person designated has accepted, or was satisfied with the materials or workmanship ; that he measured or ascertained the quantity, or fixed the price, or did any other thing required by the contract ; since, until these things are done, or their performance excused, the plaintiff has no right of action. *Scott* v. *Avery* and *Oakley* v. *Morton,* before cited ; *Grafton* v. *E. Counties R. W.* 22 E. L. & E. 557 ; *Brown* v. *Overbury,* 34 E. L. & E. 610 ; *Thurnell* v. *Balburnie,* 2 M. & W. 786, Mur. & H. 235, 1 Jur. 847 ; *Ess* v. *Trescott,* 2 M. & W. 385, Mur. & H. 75, 1 Jur. 358 ; *Maryatt* v. *Broderick,* 2 M. & W. 369, M. & H. 96, 1 Jur. 242 ; *Smith* v. *Briggs,* 3 Denio 73 ; *Lowndes* v. *Staniford,* 14 E. L. & E. 24.

If this provision is omitted in declaring on the contract, the plaintiff must be nonsuited, on the ground of variance, the contract alleged being absolute, while that proved is conditional. If the contract is truly stated, but the averment of a decision by the referee is omitted, the declaration will be held bad on demurrer, or in arrest of judgment, as showing no cause of action ; or the plaintiff will be nonsuited because his evidence shows no right of action. Uhtred's Case, 7 Co. 74 ; Gould's Pl. 175, 269 ; 1 Chitty's Pl. 309 ; Com. Dig., Pleader, C., 51, 52 ; Arch. Civ. Pl. 96, 99 ; *Smith* v. *Briggs,* 3 Denio 76 ; *Morgan* v. *Birnie,* 9 Bing. 672 ; *Coombe* v. *Greene,* 2 Dowl. N. S. 1023, 10 M. & W. 480, 12 L. J. N. S. 58.

If the party sued has, by his own act or neglect, prevented the performance of a condition precedent, he cannot take advantage of his own wrongful act, and the averment and proof of this fact will have the same effect as to the right of action as an award or decision according to the terms of the agreement. And for this purpose the acts of his agents, and of persons for whose conduct he is responsible, will have the same effect as his own. *Thomas* v. *Fredericks,* 11 Jur. 942 ; 16 L. J. Q. B. 393 ;

Smith *v.* B., C. & M. Railroad.

*Morris* v. *Haight,* 14 Barb. 76 ; *Mayor of New-York* v. *Butler,* 1 Barb. S. C. 325 ; *Smith* v. *Gugerty,* 4 Barb. 614 ; *Taylor* v. *Bullen,* 6 Cowen 624 ; *Moakley* v. *Riggs,* 19 Johns. 69 ; *Fleming* v. *Gilbert,* 3 Johns. 528 ; *Kenniston* v. *Ham,* 29 N. H. (9 Foster) 501 ; *Camp* v. *Barker,* 21 Vt. 469 ; *Carpenter* v. *Blandford,* 8 B. & C. 575 ; 4 M. & R. 93 ; *Planche* v. *Colburn,* 8 Bing. 14 ; 1 M. & S. 515, C. & P. 58 ; *Williams* v. *Bank of United States,* 2 Peters 102 ; *Miller* v. *Ward,* 2 Conn. 494 ; *Jones* v. *Walker,* 13 B. Mon. 163 ; *Hotham* v. *E. I. Co.,* 1 D. & E. 638.

No evidence of any wrongful interference of the defendant to prevent a decision, or of neglect of his duty in regard to it, will be admissible, unless the proper averments are found in the declaration ; so that if the whole matter is omitted in the declaration, or if a decision is averred to have been made, no evidence that the defendant prevented a decision, or other excuse for the want of it, will be competent. *Oakley* v. *Morton,* 1 Kern. 33 ; *Cran* v. *Clark,* 7 Barber 169 ; *Baldwin* v. *Munn,* 2 Wend. 399 ; *Phillips* v. *Rose,* 8 Johns. 392 ; *Freeman* v. *Adams,* 9 Johns. 115 ; *Fleming* v. *Gilbert,* 3 Johns. 528 ; *Little* v. *Holland,* 3 T. R. 590 ; 1 Ch. Pl. 321, 326 ; *Milner* v. *Field,* 5 Exch. 829 ; 1 E. L. & E. 531 ; *Morgan* v. *Birnie,* 3 M. & Scott 76 ; 9 Bing. 672.

Unless it is in terms, or by fair implication from the nature or language of the agreement, made the duty of the defendant to procure a decision of the referee, the responsibility rests wholly on the plaintiff to obtain it.

Though there are cases where it has been held that a reference to a third person, to measure materials or work, to judge of their quality, to fix a price, or to make an appraisal, or the like, is not a submission to arbitration, yet it seems to us that every agreement of parties, by which they bind themselves to abide by the decision of an indifferent third person, as to any matter affecting their rights, is a submission to arbitration, and the decision of such third party upon the matter thus referred to him, is an award. We do not perceive that any difference in the nature or importance of the question submitted, or of the

evidence upon which it must be decided, or in the means to be used to arrive at a correct result, can affect in this respect the nature of the proceeding. If the parties have a difference or dispute, however trivial, or upon a matter however simple, and in whatever mode the truth is to be ascertained, and they select an indifferent third person to be the judge between them, and bind themselves to abide his decision, that seems to us a submission to arbitration, and the decision to be an award.

Such an award, decision, appraisal, measurement, or whatever it may be called, of such third person, fairly made, is final and conclusive upon the question referred to him, and upon the rights of the parties in relation to it. *Branscome* v. *Rowcliff*, 6 C. B. 623 ; *De Vile* v. *Arnold*, 10 Price 21 ; *Van Cortland* v. *Underhill*, 17 Johns. 405 ; 2 Johns., Ch. 339 ; *Oakes* v. *Moore*, 11 Shep. 214 ; *Jebb* v. *Kernan*, M. & M. 340. No court will reëxamine the merits of a decision fairly made by such a referee. *Bean* v. *Wendell*, 22 N. H. (2 Foster) 588 ; *Pike* v. *Gage*, 29 N. H. (9 Foster,) 470 ; *Greenough* v. *Rolfe*, 4 N. H. 359.

It sometimes happens that parties offering large contracts insist that the work shall be done, or the materials supplied to their acceptance, or that they will pay only such prices, or for such quantities, as they shall themselves decide. As it has always been held that no man can be a judge in his own cause, such agreements have never been considered to be binding. A party cannot reserve to himself by his contract a right to decide wrong in a case involving his own interest. Broom's Maxims 84 ; Litt., sec. 212 ; Co. Litt. 141, a ; *Derby's Case*, 12 Rep. 113 ; *Bryant* v. *Flight*, 5 M. & W. 114 ; 2 Horn. & H. 84 ; 3 Jur. 681 ; *Miner* v. *Georgia R. R.*, 4 Geo. 385.

In such case it is only necessary to allege that the contract was properly performed, so that it was the duty of the defendant to accept it, and to aver that the defendant wrongfully refused, or neglected to accept, &c., or to make an appraisal, or that he made an unjust and wrongful decision upon the point, averring the true measurement, price, &c. In many cases it seems to have been held that it is not necessary to make any allusion to

these stipulations ; it being the duty of the defendant to accept, and be satisfied if the work is done according to the agreement, and to make an estimation of quantity and quality according to the truth, and to allow a fair and just price, the party having no capricious discretion whatever. It is not easy to reconcile these cases with the rules of good pleading, when such acceptance, appraisal, or the like, is made a condition precedent. *Butler* v. *Tucker*, 24 Wend. 447 ; *Dallman* v. *King*, 4 Bing. N. C. 105 ; *Bryant* v. *Flight*, 5 M. & W. 114 ; *Bird* v. *McGahey*, 2 C. & K. 707 ; *Moore* v. *Woolsey*, 4 E. & B. 243 ; *Moffat* v. *Dickson*, 13 C. B. 543 ; *Jewry* v. *Birsh*, 5 Taunt. 302.

Between the two classes of cases to which I have adverted, that of an agreement by way of condition precedent to refer matters in difference growing out of some contract, to the decision of indifferent third persons, and the attempt of a party interested in the same way to constitute himself judge in his own case, there is an intermediate class, where the contract requires that all disputes shall be referred, not to the party himself, but to his servant, agent or employee. As where an insurance company insert in their policies that they will be liable to pay only so much as their board of directors, or a committee of their board, shall allow or award ; or a railroad company require that all materials and work in the construction of their road shall be satisfactory to their engineer, or shall be accepted by him, or that he shall measure all work, and be the final judge of the quantity, quality and price of all work done, and materials furnished under the contract, or a similar provision in other agreements of companies or individuals, as to the conclusiveness of the decisions of their agents, architects or surveyors.

It seems to be every where admitted, that agreements of this kind are not nugatory nor inoperative. The parties are bound by them to a certain extent, and they must therefore be stated in every declaration upon them, according to their legal effect, and the condition precedent must be alleged to have been performed, or some legal excuse for its non-performance assigned, precisely as we have stated in the case of similar agreements to

refer to disinterested third persons. This question is, however, entirely unconnected with the question of the conclusiveness of the decision in such cases. It is a question of mere pleading, as to which there is no conflict of authorities.

The statements of a party thus referred to are without doubt evidence between the parties, upon the principle that where a party has referred another to a third person, for information in regard to an uncertain or disputed matter, he makes the statements of such person evidence against himself, and the burden is thrown upon him to show such statements to be incorrect, or mistaken. 1 Greenl. Ev., sec. 184 ; *Garnet* v. *Ball*, 3 Stark. 160 ; *Whitehead* v. *Tattersall*, 1 Ad. & El. 491.

The decisions of engineers, &c., under such contracts, have in some cases elsewhere been held to have the binding effect of awards ; but it seems it may well be doubted whether they ought to be so regarded, inasmuch as it is a rule that where a judge is interested in the result of a cause, he cannot, either personally or by deputy, where he has the power of appointing a deputy, sit in judgment upon it. Broom's Maxims 109 ; *Brooks* v. *Rivers*, Hard. 503 ; *Derby's Case*, 12 Co. 113 ; Anon. 1 Salk. 396 ; *Dimes* v. *Gr. Jn. Canal Co.*, 16 E. L. & E. 71 ; *Russell* v. *Perry*, 14 N. H. 152. From which it may be fairly inferred that the relation of employer and employed ought to exclude the latter from acting as a judge, or a referee, where his employer is a party. And as corporations necessarily act by their servants and agents, who, for purposes connected with their business, speak the voice of the corporation, it may well be understood that a stipulation in a contract for labor and services to be performed for a corporation, that the work is to be done to the satisfaction of a servant or agent of the corporation, confers no capricious power on such agent, nor any power by his decision to bind conclusively the rights of the parties. He can have no power to deprive a party of his pay by refusing to make an estimate or measurement, nor power to reduce his compensation by a false measurement or estimate. As the party to such contract has precluded himself from revoking the authority of such agent,

by making his decision a condition precedent to his right of action, he cannot reasonably be held to have waived any objection to the person of such referee. We think, therefore, it may well be doubted whether the measurement, appraisal, or other decision of a person so situated, that he cannot, by any possibility, be regarded as indifferent or impartial, can justly be held to have in any degree the conclusive character of an award. There seems to us much good sense in the opinion of Ld. Ch. *Cramworth*, in the case of *Ranger* v. *Gt. West. R. R.* 27 E. L. & E. 35, which was a case of this kind, where it was objected that the engineer was a shareholder.

In delivering the judgment it was said, " In ordinary cases it is a just ground of exception to a judge, that he is not indifferent, and the fact that he is himself a party, or interested as a party, affords the strongest proof that he cannot be indifferent. But here the whole tenor of the contract shows that it was never intended that the engineer should be indifferent between the parties. When it is stipulated that certain questions shall be decided by the engineer appointed by the company, that is in fact a stipulation that they shall be decided by the company. It is obvious that there never was any intention of leaving to third persons the decision of the questions arising during the progress of the works. The company reserved the decision for itself; acting, however, as from the nature of things it must act, by an agent, and that agent was, for this purpose, the engineer. His decisions were in fact their decisions. The company stipulated that their engineer for the time being, whoever he might be, should be the person to decide disputes.

It is, however, unnecessary here to decide any question of this kind, since the points before us relate merely to the pleadings ; and it is in this case averred and made a ground of claim that no decision was in fact made by the engineer.

Where it is stipulated by an agreement between two parties that the one shall do certain work, the other finding materials, there is an implied agreement that the materials shall be furnished, and an action lies for any loss or delay resulting from

failure to furnish them. *Railroad* v. *Howard*, 13 How. U. S. 307.

" It is the duty of the employer," says Gibbon, (Contracts 74, sec. 47,) " not to do any act which will prevent the workman from performing his contract, and also to do every act necessary to be done by him, to enable the workman to perform it. If the employer, by doing or omitting to do any act, prevent the workman from performing his contract, he is excused from the performance, and is, so far as he has been disabled by the employer, entitled to recover from him any damage he may have sustained by his act or omission. *Planche* v. *Colburn*, 8 Bing. 14 ; *Coombe* v. *Green*, 11 M. & W. 480 ; *Lilley* v. *Barnsley*, 1 C. & K. 344 ;" *Holmes* v. *Guppy*, 3 M. & W. 387.

So where it is agreed that the work shall be done under the superintendence of an engineer, that he shall measure, &c., there is an implied agreement on the part of the employer that a suitable engineer shall be employed, and that he shall do all that the contract requires to be done by him in due season, and an action will lie against the party who neglects to furnish such engineer. *Herrick* v. *Belknap*, 27 Vt. (1 Wms.) 679 ; *Harrison* v. *Gt. North. R. W.*, 8 E. L. & E. 469 ; 11 C. B. 815 ; 12 C. B. 576 ; *Mansfield, &c. R. R.* v. *Veeder*, 17 Ohio 385. And the party who does or should employ him can take no advantage of any failure on the part of the engineer to do any thing required by the contract. *Harrison* v. *Gt. North. R. W.*, above cited ; *Kingdom* v. *Cox*, 5 C. B. 522 ; *Yew* v. *Harris*, 11 Q. B. 7 ; *Smith* v. *Gugerty*, 4 Barb. 623 ; *Glen* v. *Leith*, 22 E. L. & E. 489 ; *Camp* v. *Barker*, 21 Vt. (6 Wash.) 469.

It is suggested that in the statement of the defendants' contract to furnish the right of way, &c., there is no statement of any consideration, no direct statement of any promise, and that the assignment of the breach is simply that these things were not furnished within the time in which they ought to have been furnished. These objections to the form of the statement seem to us well founded. The declaration should state the entire consideration of the contract ; so much of the whole contract as may be

necessary to render each stipulation alleged to be broken, intelligible. *Webster* v. *Hodgkins*, 25 N. H. (5 Foster) 134, 135. It should then state distinctly each agreement of the defendant, as the same is to be implied and inferred from a just construction of the whole contract, with all the conditions and qualifications which affect it. It should then state the performance of all conditions to be performed on the part of the plaintiff, or an excuse for their non-performance, and should then assign the breach of the contract substantially according to its terms. The same remarks will apply to the statement in relation to the increased aggregate of material, and other parts of the contract.

In the case of *Clarke* v. *Grey*, 6 East 564, it was held that such parts of a contract as respect only the liquidation of damages, after a right to them has accrued by a breach of the contract, is matter proper to be given in evidence to the jury in reduction of damages, but not necessary to be shown to the court in the first instance on the face of the record. See 1 Chitt. Pl. 300, 301.

But that case was unlike the present. The promise there was unqualified. The agreement as to the damages was collateral. Here the agreement that for the increased aggregate of material the engineer should make such additional allowance as he should think just, constituted a part of the promise itself, qualifying and varying the sense of it, as well as limiting the defendant's liability upon it. "If there is any part of an agreement which qualifies or varies the sense and legal effect of the parts set forth, care must be taken not to omit it, as in that case there will be a variance." *Howell* v. *Richards*, 11 East 633 ; *Hotham* v. *E. I. Co.*, 1 D. & E. 645 ; *Miles* v. *Sheward*, 8 East 8 ; *Butler* v. *Tucker*, 24 Wend. 447 ; *Green* v. *Leith*, 22 E. L. & E. 489 ; *Grafton* v. *E. Co. R. W.*, 22 E. L. & E. 557 ; *Morgan* v. *Burney*, 9 Bing. 672.

As from the contract, in the manner it is stated, the court cannot fail to see that there was a sufficient consideration for the contract, both of the plaintiff and the defendant ; as by a careful examination they can infer the conditions and qualifications of

the defendant's contract; and as it is distinctly charged, though in another connection, that the defendants did not cause any measurement to be made by the engineer, according to their agreement, the count cannot be rejected; but it becomes the duty of the court to require it to be amended, and put in a more correct and technical form.

*The demurrer, therefore, is sustained.*