Rockingham, }
Dec. 3, 1929. }

BOULIA-GORRELL LUMBER CO. *v.* EAST COAST REALTY CO.

*Marvin, Peyser & Tucker (Mr. Marvin* orally), for the plaintiff.

*Conrad E. Snow* and *Thornton L. Lorimer* (*Mr. Snow* orally), for the defendant and surety.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the mortgagee.

ALLEN, J. I. The question of the effect of a sub-contractor's knowledge of the contractor's release of liens at the time performance of the former's contract is commenced or under way, is not raised. The release was not given until the plaintiff had partly performed its contract, and there is nothing to show that it had any knowledge of the release before its performance was fully completed. And no consideration has been given to the construction of the release. Its fair meaning to prevent and bar all liens arising from the work so far as it could, is assumed.

In this situation the claim that the lien was lost through Benoit's release of his lien is based upon a theory that the plaintiff's lien was derived from and depended upon Benoit's and that whatever Benoit did to invalidate his had a like effect upon the plaintiff's. In other words, the plaintiff could not have a lien unless Benoit had one.

In support of this position stress is laid upon some of the language in *Cudworth* v. *Bostwick*, 69 N. H. 536, and particularly the following: "The statute gives the sub-contractor the same lien that the principal contractor has and nothing more. Both as to amount and the property to which it attaches, it is limited by what the principal contractor could enforce against the property."

In that case the issue was whether the sub-contractor had a lien when the owner owed the principal contractor nothing, and no such situation as is now presented was under discussion or purported to be passed upon. The quoted excerpt from the opinion is to be construed in connection with the facts of the case and in the light of the context. An earlier paragraph of the opinion emphasizes as the only essential thing to make the sub-contractor's lien good, that the owner should be a debtor of the contractor. " . . . the owner is to hold back from the principal contractor the amount due the sub-contractor," on notice of the latter's claim of a lien. What was meant by calling the sub-contractor's lien the same lien as the contractor's was that it had the same character and standing, and could not be enforced unless the law gave the contractor a lien for what might be due him. It did not mean that if the contractor saw fit to invalidate his lien, the sub-contractor was thereby deprived of his.

The law gives the contractor a lien only to the extent of the amount due him, and the sub-contractor may not have a lien beyond that amount. The contractor's and sub-contractor's liens are put on the same parity, subject to protection to the owner against having to pay more than is due under his contract with the contractor. Thus fairly construed, the opinion in *Cudworth* v. *Bostwick* is not even dictum against the plaintiff's lien.

To deny the sub-contractor his lien for any other reason than the owner's freedom from debt to the contractor would lead to the singular absurdity that one person might defeat and destroy another person's property interests at his pleasure. That the legislature undertook to give protection to the sub-contractor and at the same time place the protection at the contractor's mercy, is not shown by the phraseology of the statute that the sub-contractor "shall have the same lien" as is given the contractor. If such a limited lien was intended to be given, language which might not fairly be otherwise construed would be necessary to express it, in view of the departure from the normal incidents of ownership that would be involved.

Whatever may have once been the rule of strict construction of statutes in derogation of common-law principles, courts to-day are more disposed to adopt an attitude of ascertaining fairly and reasonably what statutes mean when their meaning is in doubt. But under the application of strict construction it would appear more in conflict with common-law doctrines to allow the contractor to dispose of the sub-contractor's lien behind his back, without his knowledge, and regardless of his consent, than to uphold the lien so far as injustice is not done the owner.

The result reached on this point is believed to be supported by the weight of authority, and among the cases which may be cited are *Norton* v. *Clark*, 85 Me. 357; *Miller* v. *Mead*, 127 N. Y. 544; *Friedman* v. *County*, 204 Mass. 494; *Stewart &c. Company* v. *Company*, 71 N. J. L. 568; *Smalley* v. *Gearing*, 121 Mich. 190; *Myers* v. *Company*, 82 Or. 29; *Maddux* v. *Buchanan*, 121 Va. 102; *Jarvis* v. *Bank*, 22 Colo. 309; *Gimbert* v. *Heinsath*, 11 Oh. C. C. 339; *Cost* v. *Company*, 85 Ark. 407.

II. A contractor furnishing labor upon, and materials for structural use for, the owner's property under a contract with him is given a lien upon the materials thus furnished and upon the property. P. L., c. 217, s. 12.

In *Cheshire Provident Institution* v. *Stone*, 52 N. H. 365, it was held that a builder had a lien superior to the lien of mortgages given dur-

ing the construction of the building and that as the work was done under an entire contract, the lien had priority over the mortgages for the labor and materials furnished after as well as before the mortgages were recorded. The mortgagee had actual notice when the mortgages were given that a building was being erected, but this fact is immaterial. "It was an entire contract; and if any part of the lumber was delivered within ninety days of the attachment, the lien was preserved for the whole. *Calef* v. *Brinley*, 58 N. H. 90. If the materials were furnished under one entire contract, one indivisible lien for the whole was created thereby." *Pike* v. *Scott*, 60 N. H. 469, 471. "The building being in the course of erection when the claimant took the mortgages, he would have constructive, if not actual, notice of the contract under which the belting was furnished, and his security would be subject to the statutory lien, if one existed." *Graton & Knight &c. Co.* v. *Company*, 69 N. H. 177, 178.

It thus appears that the contractor's lien is created as soon as any work or materials are furnished under the contract, increasing in amount according to the progress of the work until performance is completed and subject to no impairment from intervening changes of the owner's title.

As to the sub-contractor's lien, the statute gives it "provided, that he gives notice in writing to the owner . . . that he shall claim such lien before performing the labor or furnishing the material for which it is claimed," with an allowance of an alternative notice given after the work and materials are furnished. And the point is here taken that as the mortgage antedated the notice, although not the commencement of performance of the plaintiff's contract, it took priority over the lien, on the ground that there is no lien until the notice is given.

The general purpose of the legislation to give liens of contractors and sub-contractors the same standing, subject to the owner's protection against liability for more than his contract with the contractor calls for, has already been stated. This protection is secured by the requirement of notice to the owner either before the sub-contractor has commenced, or after he has completed, performance of his undertaking, with the limitation in substance that in the event of notice after completion the lien shall not be valid in excess of the amount then or thereafter due the contractor. This limitation is demanded as a matter of simple justice and expediency. The owner, having direct relation with the contractor, knows what his liability to him is. Having no such relation with the sub-contractor,

he does not know what the contractor's liability to the sub-contractor is. By receiving notice of the latter's claim of a lien he may then guard himself from liability for more than he may owe the contractor.

That the legislature had any purpose in view other than this in the difference of treatment between the contractor's and sub-contractor's liens is not to be assumed in the absence of some expression of it and in view of the language used. No reason of policy suggests itself why contractors should be more favored by the law than sub-contractors.

As to the language of the statute, by section 15 the "same lien" is given the sub-contractor as the contractor has, provided notice is given in advance of performance of the claim of a lien. There can be no lien until work or materials have commenced to be furnished, and hence the lien under this section does not date from the notice, but from the time the work or materials are begun to be furnished, the same as in the case of the contractor. By section 16 notice given after the work or materials are wholly furnished makes "said lien" valid to the extent of the owner's then or later indebtedness to the contractor. By "said lien" is meant the "same lien" as the contractor has, through its reference to the lien given by section 15. The giving of notice after the sub-contractor has completed performance thus clearly appears to be a condition subsequent rather than precedent, without consideration of the scheme of the legislation.

This wording of the statute adapts itself to the general scheme of the legislation to give uniformity of treatment to all mechanics' liens so far as justice to the owner permits, and by the adoption of the time when labor and materials are first furnished as the time the lien is created this uniformity is established. Any other rule would result in inequality. The conclusion is not doubtful that from the time performance of the sub-contractor's undertaking commences he has an inchoate although unenforceable lien which ripens into a perfected and enforceable one when the notice is given after completion of the undertaking, with retroactive effect to the time of such commencement. The commencement of the undertaking creates, and the notice preserves, the lien. And it follows that the lien is superior to mortgages given after performance is commenced and although performance may not be completed until after the mortgages are given.

Argument is made that the construction given is inexpedient and impractical in its tendency to result in difficulty for the owner to

mortgage his property in order to raise money to pay for the erection of the building, and in support of the argument it is suggested that a prospective mortgagee may readily ascertain about contractors' liens but not about those of sub-contractors. So far as legislation is to be construed upon such grounds of expediency, one answer to the argument is that the owner may give a mortgage to secure future advances promised to be made before any of the work or materials are furnished (*Peaslee* v. *Evans*, 82 N. H. 313), and another answer is that as between the practical importance of protecting sub-contractors and mortgagees, a choice of policy favoring one or the other may indifferently be made by the legislature from the standpoint of fairness,

While the construction in other jurisdictions of statutes on the subject may be of limited weight and authority here in view of the differing and various language and provisions of the statutes and in view of the logical foundation of construction as a question of fact, it may be said that there is a general spirit and tendency of the statutes both in their explicit terms and in the construction of doubtful ones in accordance with the view here taken. See 40 C. J., *s.* 327, *pp.* 264, 265; 18 R. C. L. 946, and citations therein.

III. One item in the plaintiff's specifications is for "merchandise extra contract," and it is claimed that the plaintiff can in no event have a lien on account of it. Conceivably there might be a lien for the item. The acceptance of the order for the merchandise made a valid contract, distinct from the main contract. Partial delivery before the mortgage and final delivery followed by notice and within ninety days of the attachment would create and secure a lien ahead of the mortgage.

Whatever the facts about the item, the lien for it may not here and now be questioned. The mortgagee took no exception to the refusal to strike off the default. The defendant, so far as the record shows, presented no grounds of defence in its motion for the removal of the default except as it joined with the surety. And the surety sought intervention only on the issues of the defendant's release of liens and the precedence of the mortgage. The situation procedurally is no different from that in which a ground of negligence available but not presented at the trial is here sought consideration. The trial court not having passed or refused to pass upon the issue, there is no ruling to which exception may be taken. *Hawes* v. *Chase, ante,* 170, and cases cited. "A ground of recovery not presented at the trial will not be considered here." *Duval* v. *Insurance Co.,* 82 N. H. 543,

545.  Whether a new motion relative thereto may now be made and entertained in the superior court depends upon what justice may there be found to require.

*Exceptions overruled.*

Snow and Branch, JJ., did not sit: the others concurred.