Grafton,
No. 5173.

STATE

*v.*

A. D. INGALLS, INC. *& a.*

Argued December 3, 1963.
Decided January 31, 1964.

*William Maynard*, Attorney General, and *Alexander J. Kalinski*, Assistant Attorney General (*Mr. Kalinski* orally), for the State.

*G. Wells Anderson*, ancillary trustee in bankruptcy of A. D. Ingalls, Inc. (by brief and orally), pro se.

*Upton, Sanders & Upton* (*Mr. Frederic K. Upton* orally), for defendant National Fence & Granite Co.

*Donald W. Cushing* (by brief and orally), for defendant Sigrid J. Tuttle.

*McLane, Carleton, Graf, Greene & Brown* and *G. Marshall Abbey* (*Mr. Abbey* orally), for defendant Trimount Bituminous Products Co.

*Devine, Millimet, McDonough, Stahl & Branch* and *Jarlath M. Slattery* (*Mr. Slattery* orally), for defendant Maine Bonding & Casualty Company.

LAMPRON, J. The main issue to be decided is whether the funds in the amount of $9,280 retained by the State under its contract with Ingalls should be paid to the unpaid subcontractors and materialmen or to the trustee in bankruptcy of the contractor Ingalls.

The contract between the State and Ingalls was signed March 21, 1961. The work commenced April 3, was completed August 22, and the project accepted the next day, August 23, 1961. The revised final estimate on this project was submitted by the State and accepted by Ingalls on March 13, 1962. It showed a balance due of $9,280 which was withheld by the Commissioner of Public Works and Highways and later paid into court in this proceeding. On March 16, 1962 Ingalls filed a voluntary petition in bankruptcy in the United States District Court of Maine.

The "Standard Specifications for Road and Bridge Construc-

tion" of the Department of Public Works and Highways (approved and adopted November 1, 1960) were incorporated in and made a part of this contract. Section 9.02 of these specifications reads in part as follows:

"No moneys, payable under the contract or any part thereof, except the estimate for the first month or period, shall become due and payble, if the Commissioner so elects, until the Contractor shall satisfy the Commissioner that he has fully settled or paid for all labor performed or furnished . . . for all materials used . . . and supplies purchased by the Contractor and used in carrying out said contract . . . and the Commissioner, if he so elects, may pay any and all such bills, in whole or in part, and deduct the amount or amounts so paid from any monthly or final estimate, excepting the first estimate."

RSA 229:1 provides that the Commissioner shall exercise the powers of the Department of Public Works and Highways and serve as its executive head. Section 6 grants him general supervision, control and direction on behalf of the State over all matters pertaining to the construction of highways. This court held in *Francoeur* v. *State*, 102 N. H. 339, that the Commissioner was not authorized either expressly or by implication to act or enter into a contract agreement by which as final arbitrator he could obligate the State for the payment of sums not required by the contract. However section 9.02 is limited by its terms to moneys payable under the contract. Furthermore it can have the beneficent effect of encouraging materialmen and laborers to undertake construction of highway facilities for the State. This is in addition to the benefits conferred by RSA ch. 447. *Toner* v. *Long*, 79 N. H. 458. We hold that such a provision comes within the statutory authority granted to the Commissioner over the construction of state highways. See *Wiseman* v. *Merrill*, 99 N. H. 256, 259; *Fortin* v. *Morton*, 101 N. H. 477, 479; *MacGregor* v. *Morton*, 105 N. H. 147.

By its terms section 9.02 gave the State the right to withhold, at the election of the Commissioner, the moneys payable to Ingalls under the contract (except the estimate for the first month or period) and to pay therefrom any and all bills due laborers and materialmen on the project. Ingalls granted this right to the State when it executed the contract on March 21, 1961, almost one year before it became a bankrupt. The law is well settled that the nature of the rights created by this provision is to be determined by the law of our state which is

binding on the trustee in bankruptcy. *Pitcher Company* v. *Nay Construction Co.*, 103 N. H. 357, 360; *United States* v. *Durham Lumber Company*, 363 U. S. 522; *Meyer* v. *United States*, 84 S. Ct. 318, 321.

By agreeing to section 9.02 Ingalls subjected its right to receive payment under the contract to the right it granted the State to use the retained funds to pay laborers and materialmen who thus acquired a right to be paid out of these funds. *Toner* v. *Long*, 79 N. H. 458; *Hunt* v. *Association*, 68 N. H. 305, 308. These rights arise independently of and are enforceable without the necessity of compliance with the requirements of RSA ch. 447. *American Employers Ins. Co.* v. *School District*, 99 N. H. 188; *Toner* v. *Long, supra;* See *Petition of Keyser*, 97 N. H. 404. These rights were created by the contract at the time of its execution although not available and enforceable until the Commissioner elected to retain funds for this purpose. *American Employers Ins. Co.* v. *School District, supra.*

When in accordance with this contract provision the Commissioner elected to retain money for this purpose the State held it for the benefit of the unpaid laborers and materialmen who had a right to be paid therefrom. Since their claims exceeded the retained funds, the contractor Ingalls had no interest or property right in these funds. *Pearlman* v. *Reliance Insurance Company*, 371 U. S. 132; *U. S. F. & G. Co.* v. *Lbr. Co.*, 119 Miss. 802; *United States F & G Co.* v. *Triborough Bridge Auth.*, 297 N. Y. 31; *Carney* v. *United States Guarantee Co.*, 168 Md. 134.

In its bill of interpleader the State admits knowledge of such unpaid claims in excess of the $9,280 retained. These funds were still being retained 5 months after the final estimate was agreed to by the State and Ingalls. The filing of the bill of interpleader could not affect the respective rights of the parties then existing in these funds. *United States* v. *Chapman*, 281 F. 2d 862 (10th Cir. 1960).

The trustee in bankruptcy bases his claim to the retained funds on section 70 of the Bankruptcy Act. 11 U.S.C.A., *s.* 110. By virtue of this section the trustee upon his qualification and appointment becomes vested, as of the date of the filing of the petition in bankruptcy, with the title of the bankrupt in its property. Except for the trustee's right to set aside certain fraudulent conveyances (*s.* 67) and preferential transfers (*s.* 60),

which is not claimed in this case, and the so-called "strong arm" clause (*s.* 70 (c)) which gives the trustee greater rights than the bankrupt, which we will consider later, the Act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt under state law. *Pearlman* v. *Reliance Insurance Co.,* 371 U. S. 132; *Pitcher Company* v. *Nay Construction Co.,* 103 N. H. 357, 360; *United States* v. *Chapman,* 281 F. 2d 862 (10th Cir. 1960); *Aquilino* v. *United States,* 363 U. S. 509; *United States* v. *Durham Lumber Company,* 363 U. S. 522.

Since under our law Ingalls had no property right in the $9,280 retained by the State on the day it filed its petition in bankruptcy, the retained funds did not come into the hands of the trustee or within the Bankruptcy Act. *Pearlman* v. *Reliance Insurance Company, supra; United States* v. *Durham Lumber Company, supra.*

Section 70 (c) gives the trustee the rights which a creditor of Ingalls would have had if he had trusteed the State on March 16, 1962, the day of filing of the petition in bankruptcy. This test to determine the rights of the trustee is used whether any creditor holding such a lien exists or not. 9 Am. Jur. 2d, Bankruptcy, *s.* 857, *p.* 638. By parity of reasoning the fact that the laborers and materialmen could not trustee the State (*Moore* v. *Dailey,* 97 N. H. 278) should not affect the rights of the parties. If the State had been subject to trustee process, no creditor who served it with such process on March 16, 1962 could have obtained any rights superior to those of laborers and materialmen, because Ingalls then had no rights in the fund held by the State.

The trustee's exceptions to the Court's decree that the sum of $9,280 retained by the State be divided among the creditors who are parties of record pro rata or as they may agree and that the ancillary trustee is not entitled to this sum are overruled.

*Exceptions overruled.*

All concurred.