Rockingham
No. 85-449

PINE GRAVEL, INC. & *a.*

v.

EDWARD J. CIANCHETTE d/b/a SITE PREP. & *a.*

August 12, 1986

*Bernard J. Robertson*, of Exeter, by brief and orally, for the plaintiffs, Pine Gravel, Inc. and David Bruce.

*Maire & Fisher P.A.*, of Seabrook (*Susan S. Maire* on the brief and orally), for the defendants, Edward J. Cianchette d/b/a Site Prep. and P. J. Stella Construction Corporation.

BATCHELDER, J. The plaintiffs (Pine Gravel, Inc. and David Bruce) appeal an order of the Trial Court (*Wyman*, J.) dismissing their action for breach of contract. The court granted the motion "in light of [a] contract provision that there should be arbitration before any legal proceeding might be brought." For the reasons that follow, we affirm.

This case arose from a construction project in the town of Hampton. The project involved site preparation and construction of offices and a warehouse for The Timberland Company. On November 15, 1984, Timberland Realty Trust, the owner, entered into a contract (the general contract) with P. J. Stella Construction Corporation, the contractor, in which P. J. Stella agreed to prepare the site and construct the project. P. J. Stella in turn entered into an agreement (the agreement) dated November 16, 1984, with Edward J. Cianchette d/b/a Site Prep., the subcontractor, in which Site Prep. agreed to perform site work in accordance with a prior bid letter. The agreement incorporated by reference the general contract. Site Prep. had previously entered into a subcontract (the subcontract) dated November 12, 1984 with the plaintiffs, as sub-subcontractors, in which the plaintiffs agreed to "furnish all labor, materials, and equipment for performance of . . . site work." The subcontract states that the plaintiffs "shall be bound" to Site Prep. by the terms of the agreement, and "shall assume all the obligations and responsibilities" which Site Prep. assumed toward P. J. Stella. The subcontract also states that the conditions of the agreement "are a part of this subcontract."

The role of Site Prep. in this attenuated relationship was essentially that of a broker. It did not perform any site work. Rather, it arranged to hire the plaintiffs before it secured the agreement from P. J. Stella.

The agreement is a standardized construction contract. The agreement's arbitration clause states: "All disputes, controversies, or claims of any and all kinds which may arise out of, under, or in relation to this Agreement shall be submitted to and settled by arbitration." That provision also states: "Unless waivered [sic] by the Contractor, arbitration shall be a condition precedent to the institution of any legal proceedings and the award of the arbitrators shall

be enforceable in accordance with the provisions of the law." The agreement's liens clause states:

> "The Subcontractor further agrees that he will not file or caused [sic] to be filed any mechanic's lien for materials furnished or to be furnished and/or for labor performed or to be performed unless default shall first have been made by the Contractor in making a payment under this Agreement. The Subcontractor further agrees that if any subcontractor holding a subcontract from him or any material man supplying materials to him or any one claiming by or through such subcontractor or material man shall file or cause to be filed any lien, the Subcontractor will, upon notice from the Contractor, cause such lien to be cancelled and discharged within ten days from such notice."

The plaintiffs performed most of the work under the subcontract, but when a payment dispute arose with Site Prep., the plaintiffs sought a two-fold legal remedy. First, they brought a writ in a plea of breach of contract on August 6, 1985, alleging that Site Prep. had failed to make payments under the subcontract, that P. J. Stella was "responsible for said payment," and that the company and the trust received the benefit of site work and additional work and were unjustly enriched. Contemporaneously, the plaintiffs brought a petition pursuant to RSA 511-A:8, III, for an *ex parte* attachment of the real estate owned by the trust. The petition incorporated the writ, asserted that the plaintiffs had supplied labor and materials for the project, and sought to perfect a materialman's lien under RSA chapter 447. *See Chagnon Lumber Co. v. Stone Mill Const. Corp.*, 124 N.H. 820, 823, 474 A.2d 588, 589 (1984). The plaintiffs further alleged that P. J. Stella and Site Prep. were out-of-State residents with insufficient in-State assets to secure the plaintiffs' claim. The petition to attach was granted on August 6, 1985, by *Gray*, J.

On August 29, 1985, Site Prep. and P. J. Stella filed a motion to dismiss. They alleged that the plaintiffs had failed to honor the provision of the agreement that "arbitration shall be a condition precedent to the institution of any legal proceedings," and requested, *inter alia*, dismissal of the plaintiffs' action and removal of the *ex parte* attachment. After a motion hearing the next day, the court dismissed the action on the ground that arbitration should have preceded any legal proceeding. The court's order, however, did not address the *ex parte* attachment. The plaintiffs appealed the dismissal of their action.

The record in this case is sparse and does not contain the general contract. This deficiency makes it impossible to know the full extent of the rights and obligations of the parties. Nevertheless, we are not constrained by that in addressing the two issues raised on appeal: (1) whether the court erred in dismissing the plaintiffs' action rather than ordering a stay of the proceedings pending the outcome of arbitration, and (2) whether a mandatory arbitration provision in a contract vitiates a signatory's statutory right to a materialman's lien.

We first address the court's dismissal of the action. The plaintiffs argue that the court should have stayed the action pursuant to RSA 542:2 pending the outcome of arbitration. Site Prep. and P. J. Stella counter that the arbitration provision, which was voluntarily entered into, states that arbitration is a condition precedent to the institution of any legal proceedings in this matter and requires dismissal of the action.

The record discloses that the plaintiffs agreed to the arbitration clause and to assume the obligations and responsibilities that Site Prep. had assumed toward P. J. Stella. Hence, the plaintiffs have a contractual duty to arbitrate disputes relating to the project. The plaintiffs do not dispute this fact; rather, they raise the issue whether the arbitration clause precludes this action.

At common law, an arbitration provision did not bar a suit in law or equity unless it stated that arbitration was a condition precedent to the right of a party to recover, in which case the agreement was binding. *Smith v. B., C. & M. Railroad*, 36 N.H. 458, 487 (1858). In 1929, the General Court enacted RSA chapter 542, the arbitration statute, which provides that a "written contract to settle by arbitration a controversy thereafter arising out of such contract . . . [is] valid, irrevocable, and enforceable." RSA 542:1. It further provides for the issuance of a stay if an action is brought in violation of an arbitration provision. *Id.* § 2.

In *Demers Nursing Home, Inc. v. R. C. Foss & Son, Inc.*, 122 N.H. 757, 449 A.2d 1231 (1982), this court upheld the dismissal of an action, after the defendant had filed a formal demand for arbitration pursuant to an arbitration clause, based on the plaintiff's failure to arbitrate, but we did not address the issue of whether dismissal or a stay was the proper relief to be granted. This issue was addressed, however, in *United States v. Seaward Construction Company*, 298 F. Supp. 1356 (D.N.H. 1969). In *Seaward*, the court granted a motion to dismiss based on the premise that failure to adhere to an arbitration provision precluded the institution of a contract claim. The court found that the federal statute providing for a stay of legal proceedings pending the outcome of arbitration did not

supersede the mandatory arbitration provision in the contract. Because the arbitration provision in *Seaward* is similar to the one in this case, and because the federal statute providing for a stay of proceedings cited in *Seaward* is virtually identical to RSA 542:2, we find that case dispositive. Accordingly, we affirm the trial court's dismissal of the action. We note, however, that the dismissal is without prejudice, and that the dismissal has the same effect as a stay.

■ The second issue raised is whether either the liens or the arbitration provision in the subcontract amounts to a waiver of the plaintiffs' statutory right to a materialman's lien. Site Prep. and P. J. Stella allege that the express language of the subcontract, which incorporates the agreement and states that Site Prep. will not file a lien for labor or materials "unless default shall first have been made," constitutes a valid waiver. They contend that the writ does not allege a default, and that therefore the subcontract provision expressly precludes the filing of a lien. This argument, however, ignores the express language of the writ, which states that the subcontractor failed to make a timely payment in July 1985, and indicates that the contractor is contractually responsible for the payment, as well as for additional monies. The writ clearly alleges a default, and thus the defendants' argument is unavailing.

■ We now consider whether the arbitration provision is a waiver of lien rights. The right to a lien for labor and materials has long been recognized in this State and elsewhere. *See Shapley v. Bellows*, 4 N.H. 347, 353–55 (1828); *Hiltz v. Gould*, 99 N.H. 85, 86, 105 A.2d 48, 50 (1954); RSA ch. 447; *see also McMurray v. Brown*, 91 U.S. 259 (1875). The provision of labor or materials creates a lien, which may later be enforced by legal procedures. *See, e.g., Boulia-Gorrell Lumber Co. v. Company*, 84 N.H. 174, 178, 148 A. 28, 31 (1929). The purpose of a lien is to secure the right of a provider of labor or materials to recover from the recipient thereof if a judgment is rendered in the provider's favor. A lien provides security against the property owner for the value of the labor or materials rendered. In the context of a subcontract, however, the lien is limited by the amount the owner owes the principal contractor. *Westinghouse Elec. Supply Co. v. Electromech, Inc.*, 119 N.H. 833, 836, 409 A.2d 1141, 1143 (1979).

In *Chagnon Lumber Co. v. Stone Mill Const. Corp.*, 124 N.H. at 820, 474 A.2d at 588, we approved the procedure under RSA 511-A:8, III for perfecting a materialman's lien. The plaintiffs in this case have proceeded under that statute. Although the trial court did not rule on the validity of the attachment and perfection of the lien,

and the record is incomplete in this regard, we will assume for purposes of this appeal that the attachment perfecting the lien is valid.

■ Site Prep. and P. J. Stella argue that the plaintiffs' promise to arbitrate any dispute, controversy, or claim amounts to a waiver of the right to perfect a materialman's lien. This argument, however, confuses the relationship between the duty to arbitrate and the right to perfect such a lien. The agreement to arbitrate refers to the method of resolving the dispute; the lien merely serves as security to enforce any judgment or award rendered against the trust. Moreover, as a general matter, the existence of a lien does not hamper or interfere with the arbitration process. Conversely, we do not think the duty to arbitrate should interfere with or waive the right to a materialman's lien. A waiver requires an actual intention to forego a known right. *Tothill v. Richey Ins. Agency, Inc.*, 117 N.H. 449, 454, 374 A.2d 656, 659 (1977). Such a waiver should not be presumed; a clear expression of intent to waive the right must exist. *See Mills v. Robert W. Gottfried, Inc.*, 272 So. 2d 837, 839 (Fla. Dist. Ct. App. 1973). We therefore hold that the arbitration provision is not a waiver of the plaintiffs' right to a materialman's lien. *See, e.g., id.; Park Lane Properties v. Fisher*, 89 Colo. 591, 593–94, 5 P.2d 577, 579 (1931); Annot., 73 A.L.R.3d 1042, 1046 (1976).

■ We note in closing that although the plaintiffs were not statutorily required to institute a suit for damages for breach of contract on the same writ that was used to perfect the materialman's lien, they nevertheless did so. The court's determination that the suit for damages was premature and precluded by the arbitration clause did not render the lien a nullity. Moreover, the fact that RSA 447:10, which describes the method for securing a lien, predated the prejudgment attachment statute, RSA 511-A, undoubtedly accounts for the employment of a writ for the purpose of attachment. This may contribute to confusion on the part of practitioners in determining what must be done to protect the creditor's interest, because historically the function of a writ has been the commencement of an action at law. The attachment securing the lien serves a narrower purpose than the action for damages, *see Hale v. Brown*, 58 N.H. 323 (1878), but both may be necessary to secure a creditor's rights.

Accordingly, the trial court's dismissal of the action is affirmed without prejudice pending the outcome of arbitration, and the court's order is ineffective with respect to the plaintiffs' materialman's lien.

*Affirmed.*

All concurred.