**Claron D. BAILEY, Plaintiff and Appellant,**

**v.**

**William G. CALL and Gene S. Call, Defendants and Respondents.**

**No. 870203–CA.**

Court of Appeals of Utah.

Jan. 12, 1989.

Steven F. Alder (argued), Salt Lake City, for plaintiff and appellant.

John W. Call (argued), Salt Lake City, for defendants and respondents.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

BILLINGS, Judge:

Appellant Claron Bailey ("Bailey") appeals the trial court's refusal to enforce his mechanic's lien against real property owned by respondents William and Gene Call ("Call"). Bailey also challenges the trial court's award of only $1,800 in damages pursuant to Utah Code Ann. §§ 14-2-1 and -2 (1986),[1] for Call's failure to obtain a bond. Finally, Bailey challenges the court's refusal to award him attorney fees. We reverse and remand.

## FACTS

In April 1985, Call was repairing the roof of his carpet and furniture store. A customer, Mr. Leroy Gurule ("Gurule"), claimed he could supply the ceiling tiles, grids and other materials required for repairs at a very low cost. Call and Gurule entered into an agreement whereby Gurule would supply the materials. Call claims he understood the materials were to be supplied from Gurule's stock, or brought in by bulk delivery to save Call money.

Instead, Gurule ordered the materials on open account from Bailey. All invoices stated the materials were for "Mastercraft Warehouse," Call's carpet and furniture store, and that is where the materials were delivered. Call claims he personally was not aware the materials were purchased from Bailey until the job was completed and Call had partially paid Gurule. However, an employee of Call testified he knew the materials were coming from Bailey. The trial court found the *reasonable value* of the materials sold to Gurule and installed as improvements to Call's real property was $3,327.90.

When Bailey did not receive payment for the materials, he filed a valid mechanic's lien pursuant to Utah Code Ann. § 38-1-3 (1986), and subsequently brought this action to foreclose the lien or, alternatively, impose liability on Call pursuant to the bond provision of Utah Code Ann. § 14-2-1 (1986). The trial court held that Gurule, as Call's agent, had no authority to order the materials from Bailey and thus Bailey could not foreclose his mechanic's lien. However, the trial court entered judgment for $1,800 together with costs and interest against Call since Call had not required Gurule to provide a bond to protect materialmen, as required under Utah Code Ann. § 14-2-1 (1986).

## STANDARD OF REVIEW

The standard of review for findings of fact entered by a trial court in a non-jury proceeding is set forth in Utah R.Civ.P. 52(a), which provides, in pertinent part:

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

■ However, we review a trial court's conclusions of law under a correction of error standard. *Stewart v. Coffman*, 748 P.2d 579, 580–81 (Utah Ct.App.1988) (quoting *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985)).

1. Utah Code Ann. §§ 14-2-1, -2 (1986), were repealed in 1987. However, the changes are not relevant to our decision as we decide the case on an alternative basis.

MECHANICS' LIENS

■ The trial court found Call and Gurule had agreed that all materials would be provided from Gurule's inventory. Based on this finding, the court concluded that Gurule was acting in excess of his authority when he purchased materials from Bailey, precluding foreclosure of Bailey's mechanic's lien. On appeal, Bailey contends neither the facts nor the law support such a limitation on Gurule's authority. We agree.

The controlling statutory provision provides, with our emphasis:

Contractors, subcontractors, and all persons performing any services or furnishing or renting any materials or equipment used in the construction, alteration, or improvement of any premises in any manner ... shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials or equipment for the value of the service rendered, labor performed, or materials or equipment furnished or rented by each respectively, *whether at the instance of the owner or of any other person acting by his authority as agent, contractor, or otherwise.*

Utah Code Ann. § 38–1–3 (1986). The issue is whether Bailey provided materials "at the instance of the owner (Call) or of any other person acting by his authority as agent, contractor or otherwise."

The mechanics' lien statute "is intended and designed to prevent the owner of land from taking the benefits of improvements placed on his property without paying for the labor and material that went into them." *Frehner v. Morton*, 18 Utah 2d 422, 424 P.2d 446, 447 (1967). The statute is to protect laborers and materialmen who enhance the value of the property, and to effectuate that purpose, we construe the statute broadly. *Interiors Contracting Inc. v. Navalco*, 648 P.2d 1382, 1386 (Utah 1982).

The Utah Supreme Court, discussing an agent's authority to bind the owner/principal under the mechanics' lien statute, has stated "the facts of the transaction must be explored.... [T]he courts have often gone beyond the agreement and into the whole circumstances ... in order to find the answer." *Interiors Contracting Inc.*, 648 P.2d at 1387 (quoting *Utley v. Wear*, 333 S.W.2d 787, 792–93 (Mo.App.1960)). In making this evaluation, "[s]o long as it can be found that the [contractor] performed the work at the instance of [the owner] under an express or implied contract ... the lien is valid." *Dugger v. Cox*, 564 P.2d 300, 302 (Utah 1977). If it appears the improvements are for the benefit of the owner, and performed at the instance of the owner's agent, "then it can be said with justice that the [contractor] in such case is acting for the [owner]." *Zions First Nat'l Bank v. Carlson*, 23 Utah 2d 395, 464 P.2d 387, 390 (1970).

In *Interiors Contracting Inc.*, the Utah Supreme Court addressed the liability of a lessor for contracts made by a lessee for improvements to the lessor's real property. 648 P.2d at 1386–87. The *written* lease between the lessor and lessee *expressly* required all improvements to be made at the lessee's expense and required the lessee to promptly pay all contractors and materialmen. The issue, as in this case, was whether the limitation on the lessee's agency precluded lien liability on the lessor's/owner's fee interest. The Court found this express limitation of authority in the lease agreement "cannot override the effect of the mechanics' lien law as to persons not a party to the lease." *Id.* Thus, the limited agency between the owner and the agent was not the decisive factor. Rather, the Court focused on the benefits conferred upon the owner. *Id.* Accord *Metals Mfg. Co. v. Bank of Commerce*, 16 Utah 2d 74, 395 P.2d 914, 915 (1964) ("[I]t would seem to be unrealistic and unreasonable to conclude that such parties by agreement among themselves, could bind third party suppliers of materials *to the terms of an agreement to which such suppliers* were not privies and the terms of which they do not know.").

Other jurisdictions which have considered this issue have held that the owner consent required by a mechanics' lien stat-

ute is merely authority to commence work on improvements. Once the owner gives authority to his contractor agent to begin work, secret limitations as to the price or nature of the work are an ineffective defense against a mechanic's lien. For example, in *Vickery v. Richardson*, 189 Mass. 53, 75 N.E. 136 (1905), the Massachusetts Supreme Court analyzed an owner's defense to a mechanic's lien. The architect had been given express limitations on the amount of money he was authorized to spend for improvements. Contrary to these express limitations, the architect engaged a contractor to build for an amount in excess of the authorized limit. The court upheld the contractor's lien on the owner's property, stating:

> [I]t is claimed that this implied authority, although it empowered [the architect] to make ... contracts, did not confer any authority to bind the [owner] to pay an increased price, as [the architect] was limited to the amount specified in the contract with [the owner].... *The consent given, however, is to the performance of the work, not to the lien, or the amount for which, under it, the interest of the owner in the land can be charged.*

*Id.* 75 N.E. at 136 (emphasis added).

With these principles in mind, we review the trial court's refusal to foreclose Bailey's mechanic's lien. It is undisputed that Bailey was unaware of any agreement between Call and Gurule limiting Gurule's authority to purchase materials. Accordingly, under the precedent previously discussed, even if the evidence supports the trial court's finding that Gurule was to supply the materials from his own inventory, this limitation does not preclude foreclosure of Bailey's mechanic's lien.

If, as in *Interiors Contracting Inc.*, an express limitation in a lease cannot protect a lessor/owner from lien liability, it necessarily follows that a verbal understanding cannot limit the lien liability of an owner against a materialman who, in good faith, supplied products to the contractor to benefit the owner's property.

The trial court's legal conclusion that Gurule could not bind Call as owner of the property is in error. Gurule was an agent authorized to furnish materials to improve Call's property, under the mechanics' lien statute. Gurule purchased $3,327.90 in materials from Bailey which directly benefited Call's property, and Bailey was not paid for these materials. Bailey properly filed a mechanic's lien and is entitled to its foreclosure. Call could not limit Gurule's authority to the detriment of Bailey, a third party supplier not privy to Gurule's and Call's original conversation. Call's consent and authorization under the mechanics' lien statute went to the performance of the work, not to the source of the materials.

We reverse the trial court and award Bailey $3,327.90 under his mechanic's lien claim.[2]

## ATTORNEY FEES

The second issue on appeal is the trial court's denial of Bailey's claim for attorney fees. Utah Code Ann. § 38–1–18 (1988) provides:

> In any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action.

Because of our decision allowing Bailey to foreclose his mechanic's lien, we hold he is entitled to a reasonable attorney fee. Accordingly, we reverse and remand for the determination of a reasonable attorney fee under § 38–1–18.

**REVERSED AND REMANDED.**

JACKSON, J., concurs.

ORME, Judge (concurring specially):

I agree with what is said in the main opinion about the applicability of the mechanics' lien statute and Bailey's right to foreclose his lien. I am troubled by the

---

2. Based upon our conclusion that Bailey's mechanic's lien can be foreclosed against Call, it is unnecessary to reach the issues Bailey raises under the bond statute.

result, however, in that the adjudged amount of Bailey's lien, $3,327.90, greatly exceeds the amount Call agreed to pay Gurule for the materials.[1] As Call had a deal to procure those materials for much less, it strikes me as unfair to impose this full amount on Call. Call had no knowledge of Bailey and no control over him. Indeed, Call's contract with Gurule specifically required Gurule to supply the materials himself, on favorable terms. Nor do I see how Call could have done anything to protect himself—short of calling all construction material suppliers in the West and advising them of the fact Gurule had no authority to purchase materials from them for use in Call's project. As a matter of fairness, I think Bailey's lien should be limited, aside from recoverable fees and costs, to the amount Call contracted to pay for the materials.

Indeed, a number of reported cases have held that the amount of a subcontractor's or supplier's lien is limited by the amount owed on the contract between the owner and contractor. *See, e.g., Westinghouse Elec. Supply Co., Inc. v. Electromech, Inc.,* 119 N.H. 833, 409 A.2d 1141, 1143 (1979); *Cashway Lumber Co. v. Langston,* 479 P.2d 582, 586 (Okla.1970). "This limitation is demanded as a matter of simple justice and expediency. The owner, having direct relation with the contractor, knows what his liability to him is. Having no such relation with the subcontractor, he does not know what the contractor's liability to the subcontractor is." *Westinghouse Electric,* 409 A.2d at 1143 (quoting *Boulia–Gorell Lumber v. East Coast Realty Co.,* 84 N.H. 174, 148 A. 28, 31 (1929)). "The purpose of limiting a subcontractor's lien, therefore, is to protect the owner from unknown liability to the subcontractor or materialman and from liability for pay-

ments in excess of the amounts owed to the general contractor." 409 A.2d at 1144.

However, it must be conceded that these cases turn on particular statutory provisions. Likewise, an old Utah case is consistent with the notion that a supplier's or subcontractor's lien may not exceed the amount the property owner contracted to pay. *See Sierra Nevada Lumber Co. v. Whitmore,* 24 Utah 130, 66 P. 779, 781 (1901) ("subcontractor, by virtue of the original contract, is entitled, under his subcontract, to a lien, within the limit of the original contract price"). But *Sierra* also turned, in relevant part, on a statutory provision which appears to have been deleted at some point from the Utah Code and is not in the present version of our mechanics' lien statute.[2] *See* Utah Code Ann. §§ 38–1–1 to –26 (1988).

Unfortunately, in my view, the statutory scheme currently in effect in Utah does not protect a property owner from potentially paying more to a subcontractor or supplier than he agreed to pay to his contractor. On the contrary, the property owner is only protected to the extent that he cannot be liened for more than the "value" of the materials. Utah Code Ann. § 38–1–3 (1988). Such protection is no doubt sufficient in the routine case, but it is inadequate in a case like this one, where a property owner contracts for materials at greatly discounted prices and ends up being liable for the full value of those materials through no fault of his own.

---

1. That amount was $2,600 according to Call's uncontroverted testimony. The findings prepared by Bailey's counsel mistakenly recite a figure of $1,800.

2. The provision, Rev.Stat. § 1373, provided in part as follows: "In case of a contract between an owner and a contractor, the lien shall extend to the entire price, and such contract shall operate as a lien in favor of all persons except the contractor to the extent of the whole contract price...." *Sierra,* 66 P. at 781.