Portsmouth District Court
No. 91-108

RICHARD RUSSELL d/b/a MAINE MECHANICAL

v.

MARK AND KAREN WOODBURY

April 2, 1992

*Hibbard & Spinella P.A.*, of Concord (*Frank P. Spinella, Jr.*, on the brief and orally), for the plaintiff.

*Mulvey, Noucas & Cornell P.A.*, of Portsmouth (*Lori Armbrust Howell* on the brief and orally), for the defendants.

JOHNSON, J.  The defendants, Mark and Karen Woodbury, appeal from a ruling by the Portsmouth District Court (*Coffey*, S.J.) that the plaintiff, Maine Mechanical, could recover $5,020 under a mechanic's lien on the Woodburys' home. For the reasons that follow, we reverse.

The parties stipulated to the following facts. On September 29, 1989, Lambert Realty Ltd. (the general or principal contractor) entered into a contract to build the Woodburys' home for an adjusted contract price of $153,462. Lambert then subcontracted with Maine Mechanical to do the plumbing and heating work on the home for a subcontract price of $14,020. On or about March 30, 1990, Lambert, due to financial difficulties, stopped working on the Woodburys' home. Maine Mechanical, apparently realizing that the contractual relationship between Lambert and the Woodburys was in jeopardy, recorded a mechanic's lien against the Woodburys' home on April 27, 1990, and the Woodburys were notified of this mechanic's lien on April 30, 1990.

As of April 30, 1990, the Woodburys had paid Lambert $148,053.80 of the original, adjusted contract price of $153,462, leaving a contract balance of $5,408.20. This balance would have been totally earned and due upon satisfactory completion of the contract. As of April 30, 1990, Lambert had paid Maine Mechanical $9,000 of the subcontract price of $14,020, leaving a balance earned and due of $5,020.

On May 3, 1990, based on the work stoppage, the Woodburys terminated their contract with Lambert. They hired new contractors to finish the home at a cost of $8,189.54. Thus, Lambert's failure to complete the home caused the Woodburys to incur costs of $2,781.34 above the original, adjusted contract price of $153,462.

The issue presented on appeal is whether the Maine Mechanical mechanic's lien, which attached on April 30, 1990, amounted to any sum to be enforced against the property of the Woodburys. Maine Mechanical argues that the lien runs to the total $5,020 due as the balance on its subcontract. The Woodburys assert that the lien amounts to nothing.

■ It is well-established in this jurisdiction that a subcontractor's mechanic's lien is "limited . . . by the amount the owner owes the principal contractor." *Westinghouse Elec. Supply Co. v. Electromech, Inc.*, 119 N.H. 833, 836, 409 A.2d 1141, 1143 (1979) (citing *Boulia-Correll Lumber Co. v. East Coast Realty Co.*, 84 N.H. 174, 148 A. 28 (1929) and *Cudworth v. Bostwick*, 69 N.H. 536, 45 A. 408 (1898)). RSA 447:5 provides that a subcontractor

> "by virtue of a contract with an agent, contractor or subcontractor of the owner, . . . shall have the same lien . . . provided, that he gives notice in writing to the owner or to the person having charge of the property that he shall claim such lien before performing the labor or furnishing the material for which it is claimed."

This language has been interpreted as follows: "the statute gives the subcontractor the same lien that the principal [general] contractor has and *nothing more.*" *Cudworth, supra* at 537, 45 A. at 409 (emphasis added). Moreover, if the subcontractor does not notify the property owner of the mechanic's lien until *after* performance begins, RSA 447:6 provides that the lien is only valid "to the extent of the amount then due or that may thereafter become due to the contractor, agent or subcontractor of the owner."

Under Maine Mechanical's interpretation of RSA 447:6, the "amount then due or that may thereafter become due" to the primary or general contractor is *definitively* established the moment the subcontractor notifies the property owner of the mechanic's lien, and includes any amount that could become due under the terms of the prime contract. Applying this interpretation, Maine Mechanical points out that on April 30, 1990, the date of notification, the Woodburys had not yet terminated their contract with Lambert. Thus, it is argued that the Woodburys had not accrued any right to setoff amounts paid to complete the home. Lambert could have resumed work on the home before the contract was terminated on May 3, 1990, and generated sums "thereafter becom[ing] due." Because the Woodburys did not have a right to setoff on April 30, 1990, Maine Mechanical argues, they are forever barred from setting off amounts subsequently paid as a result of Lambert's breach.

■ We reject Maine Mechanical's interpretation of RSA 447:6. RSA 447:6 does not alter the fundamental principle that a subcontractor's mechanic's lien is "limited . . . by the amount the owner owes to the principal contractor." *Westinghouse supra.* Rather, it places additional limitations on the amount recoverable when the

subcontractor does not notify the owner of the mechanic's lien until after performance. RSA 447:6 was enacted, in part, "to protect the owner from unknown liability to the subcontractor or materialman and from liability for payments in excess of the amounts owed to the general contractor." *Westinghouse, supra* at 837, 409 A.2d at 1144.

■■ We interpret ambiguous statutory language in light of the evil which the statute was enacted to remedy. *See Appeal of Coastal Materials Corp.*, 130 N.H. 98, 103, 534 A.2d 398, 400 (1987). Thus, we refuse to interpret the terms "amount then due or that may thereafter become due" in a manner that would encourage payments by the owner in excess of the contract price. Instead, we hold that the language "amount then due or that may thereafter become due" limits recovery under RSA 447:6 to those sums in fact due and owing to the general or principal contractor at the time of notice plus any sums which actually become due to the general or principal contractor after notice is given.

Maine Mechanical's interpretation, which allows the subcontractor to recover all amounts which the owner *potentially owes* the general or principal contractor as of the time of notice, fails to protect the owner from excess payment and thereby furthers an evil which RSA 447:6 was enacted to remedy. It also undermines the fundamental principle that a subcontractor's mechanic's lien is limited by the amount owed to the general or principal contractor.

■ In this case, at the time of notice, the parties were in work stoppage. Subsequent to notice, the contract was terminated and the work completed by another contractor. Clearly, Lambert will never earn post-notice amounts. Maine Mechanical's lien is measured, therefore, by the amount due Lambert at the time of notice. Although the record does not permit calculation of this sum, it does provide us with the maximum that could have been earned and an agreed value of goods and services to complete the contract. Since the record discloses that the cost to complete exceeds the balance that could be earned under the contract, we are compelled to find that at the time of notice nothing was due Lambert and, therefore, the lien has no value.

*Reversed; judgment for
the defendant.*

All concurred.