Rockingham
No. 2903-173

## DUKE/FLUOR DANIEL

v.

## HAWKEYE FUNDING, LIMITED PARTNERSHIP & a.

Argued: January 7, 2004
Opinion Issued: February 26, 2004

*Cook, Little, Rosenblatt & Manson, P.L.L.C.*, of Manchester (*Arnold Rosenblatt* and *Michael S. Owen* on the brief, and *Mr. Owen* orally), for the plaintiff.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Michael D. Ramsdell* on the brief and orally), for the defendants.

## MEMORANDUM OPINION

NADEAU, J. This case comes before us on interlocutory appeal from a ruling of the Superior Court (*McHugh*, J.), *see* SUP. CT. R. 8, holding that the plaintiff, Duke/Fluor Daniel, is not permitted to have a prejudgment attachment in this action and ordering the plaintiff to remove the attachment it had obtained. We affirm and remand.

The following facts appear in the trial court's order. The plaintiff sued the defendants, Hawkeye Funding, Limited Partnership (Hawkeye) and Newington Energy, LLC, alleging that it built a power plant for the defendants and is owed money under the parties' contract. The plaintiff also filed a petition to attach the power plant pursuant to the mechanic's

lien statute, RSA chapter 447. The attachment was initially granted prior to the defendants having an opportunity to object.

The defendants moved to dismiss the attachment, arguing that the plaintiff had waived its right to a mechanic's lien in the parties' contract. The trial court agreed, ruling that according to the unambiguous language of section 3.15 of the contract, the plaintiff was prohibited from obtaining a prejudgment lien on the power plant.

In this interlocutory appeal, the trial court submitted eight questions of law. The first seven, however, all deal with whether the court correctly interpreted section 3.15 of the parties' contract. We will therefore directly address only that issue. The final question presented is whether the court erred in concluding that the power plant would retain sufficient value at the end of the lawsuit to guarantee payment of a judgment.

The contract provision primarily at issue provides, in pertinent part:

> 3.15. No Liens.
> So long as no undisputed amounts due hereunder are outstanding, in which such case only to the extent of such outstanding undisputed amount, Contractor shall not directly or indirectly create, incur, assume, or suffer to be created by any of its subcontractors, vendors, laborers, materialmen, other suppliers of goods or services, or any other Person, any Lien on the Facility Site, the Facility, or any part of or interest in either.

The trial court found that although this provision does not explicitly refer to mechanic's liens or prejudgment attachments, both are encompassed by the definition of "Lien" in the contract. It also concluded that the language of section 3.15 was not ambiguous and that "[i]t includes the contractor, in this case the plaintiff, as well as any subcontractors in the category of persons or entities that are prohibited from placing any prejudgment lien on the facility."

"The interpretation of a contract, including whether a contract term is ambiguous, is ultimately a question of law for this court to decide." *Appeal of Reid*, 143 N.H. 246, 249 (1998) (quotation omitted). Accordingly, "we review the trial court's interpretation of the contract *de novo*." *Lawyers Title Ins. Corp. v. Groff*, 148 N.H. 333, 336 (2002) (quotation omitted). In interpreting a contract,

> we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole.

> Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract.

*Id.* at 336-37 (quotations and citation omitted).

■ The plaintiff points out that section 3.15 applies because the amounts here are disputed. However, the plaintiff asserts that section 3.15 cannot be interpreted to cover its own mechanic's liens because, under the mechanic's lien statute, it cannot create a lien on its own behalf. It argues that such "liens are created when one procures labor or materials and fails to pay for them." Thus, the plaintiff claims, its lien was created not by it but by Hawkeye, and the only way it could create a lien is "by having subcontractors perform work and not paying them." Accordingly, the plaintiff argues, section 3.15 covers only subcontractors' liens.

RSA 447:2 (2002) provides:

> If any person shall, by himself or others, perform labor or furnish materials to the amount of $15 or more for erecting or repairing a house or other building or appurtenances ... by virtue of a contract with the owner thereof, he shall have a lien on any material so furnished and on said structure, and on any right of the owner to the lot of land on which it stands.

We have noted that it is "[t]he provision of labor or materials [that] creates a [mechanic's] lien," *Pine Gravel, Inc. v. Cianchelle d/b/a Site Prep.*, 128 N.H. 460, 464 (1986), and that "the contractor's lien is created as soon as any work or materials are furnished under the contract, increasing in amount according to the progress of the work until performance is completed." *Boulia-Gorrell Lumber Co. v. Company*, 84 N.H. 174, 177 (1929) (construing earlier version of statute). Thus, creation of the lien does not depend upon the owner's nonpayment; rather, the contractor "creates" its own lien by performing the work or furnishing the materials.

The plaintiff argues that interpreting the contract term "create" in this manner would "make no sense—because to comply with it [the plaintiff] would have to refrain from doing the very thing that the contract expressly requires, namely, build the plant." Because we interpret contract language according to its reasonable meaning, *Lawyers Title Ins.*, 148 N.H. at 336, we decline to read section 3.15 as prohibiting the plaintiff from performing work under the contract. Rather, we read that provision as a waiver of the statutory lien the plaintiff would otherwise acquire by virtue of performing such work.

■ In *Pine Gravel*, 128 N.H. at 464-65, we implicitly recognized that the statutory mechanic's lien can be waived by contract. We noted, however, that "[a] waiver requires an actual intention to forego a known right. Such a waiver should not be presumed; a clear expression of intent to waive the right must exist." *Id.* at 465 (citation omitted). We conclude that section 3.15 constitutes a clear expression of intent to waive the plaintiff's right to a mechanic's lien to secure disputed amounts allegedly due under the contract. Although perhaps not as artfully drafted as it might have been, section 3.15 is not ambiguous. "The language of a contract is ambiguous if the parties can *reasonably* differ as to its meaning." *Gamble v. University of New Hampshire*, 136 N.H. 9, 14 (1992) (emphasis added). As discussed above, the plaintiff's interpretation of section 3.15 is based upon an erroneous construction of RSA 447:2. Because that interpretation is therefore unreasonable, we do not find the provision ambiguous.

The plaintiff further asserts that section 3.15, if read as we have construed it, conflicts with other contract provisions, namely, section 7.1 dealing with payments to the contractor, and the prescribed forms for the contractor's certificate and waiver and release of liens. These provisions, however, require the plaintiff to certify the absence of subcontractors' liens and to waive any lien it may have with respect to, and to the extent of, the progress payment it is receiving. Such progress payments would constitute undisputed amounts excepted from the application of section 3.15. Thus, we find no conflict between these provisions.

The plaintiff next argues that construing the first sentence of section 3.15 to encompass its liens renders the remainder of the section nonsensical. For instance, the second sentence requires the plaintiff to "pay or discharge (by bond or otherwise) any such Lien." If the term "Lien" includes its own lien, the plaintiff argues, the provision would require it to pay itself.

Again, although the provision is somewhat inartfully drafted, we conclude that it does not require such a result. We have interpreted the first sentence of section 3.15 as a waiver of the plaintiff's statutory mechanic's lien that would otherwise arise upon the plaintiff's performance of work under the contract. By virtue of this waiver, there is no "such Lien" on behalf of the contractor to pay or discharge under the second sentence of section 3.15.

Finally, the plaintiff argues that the trial court's conclusion that the power plant would retain sufficient value at the end of litigation to guarantee payment of a judgment is unsupported by the evidence and clearly erroneous. In light of our holding that the plaintiff waived its right

to a mechanic's lien, we find it unnecessary to address this issue and therefore decline to do so.

*Affirmed and remanded.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.